2009 UT 62

STATE of Utah, Plaintiff and Appellee,

v.

Ronald Richard RODRIGUES,
Defendant and Appellant.

No. 20070741.

Supreme Court of Utah.

Sept. 25, 2009.

612

Mark L. Shurtleff, Att'y Gen., Ryan D. Tenney, Asst. Att'y. Gen., Salt Lake City, for plaintiff.

Joan C. Watt, Michael Misner, Salt Lake City, for defendant.

On Certification from the Utah
Court of Appeals

PARRISH, Justice:

## INTRODUCTION

¶ 1 Defendant appeals the district court's order amending and increasing its initial order of restitution. This appeal requires us to consider: (1) whether a district court has jurisdiction to amend an order of restitution under rule 30(b) of the Utah Rules of Criminal Procedure where the State mistakenly provided the court with an incorrect figure of restitution at the sentencing hearing; and (2)

assuming the court had jurisdiction, whether the amended order of restitution violates protections against double jeopardy or defendant's due process rights to presence and allocution.

¶ 2 We hold that in this case rule 30(b) applies, and the district court had jurisdiction to amend the order of restitution. We further hold that double jeopardy did not attach and that defendant's due process rights were not violated when the district court corrected a clerical error regarding the amount of restitution ordered. We therefore affirm the district court's amended order of restitution.

## BACKGROUND

¶ 3 Ronald Richard Rodrigues was charged with two counts of criminal nonsupport, a third degree felony, in violation of Utah Code section 76–7–201 (2008). In the first count, the State alleged that Mr. Rodrigues failed to support the child he had with Jennifer Falsone; in the second count, the State alleged that Mr. Rodrigues failed to support the two children that he had with Michele Rodrigues.

¶ 4 In May 2005, Mr. Rodrigues agreed to plead guilty to one count of criminal nonsupport and to pay restitution "in the amount of the total amount of child support arrears owed for the support of [his] children on both counts from May 1999 through the date of sentencing." Pursuant to the plea agreement, Mr. Rodrigues agreed that restitution would be calculated at $617 per month ($289 to Ms. Falsone and $328 to Ms. Rodrigues) plus interest. The plea agreement indicates that at the time it was signed Mr. Rodrigues owed $49,000.46, and that "[a]n updated calculation [of the total amount of child support owed would] be provided the day of Sentencing."

¶ 5 After Mr. Rodrigues signed the plea agreement, the district court scheduled a sentencing hearing for July 11, 2005, but Mr. Rodrigues failed to appear for the hearing and fled the State. The district court issued an arrest warrant, and Mr. Rodrigues was apprehended more than a year and a half later on January 17, 2007.

¶ 6 About a month before Mr. Rodrigues's sentencing, Adult Probation and Parole prepared a Presentence Investigation Report (the "PSR"). The PSR confirmed that Mr. Rodrigues was obligated to pay $289 per month to Ms. Falsone and $328 per month to Ms. Rodrigues for child support. The "Victim Impact Statement and Restitution" section in the PSR indicates that the State sought restitution "owed for both families from May 1, 1999, through the date of sentencing" and that "[a]s of February 2, 2007, that amount total[ed] $63,507.71."

¶ 7 On March 19, 2007, Mr. Rodrigues appeared for sentencing before the district court and "concur[red] with the recommendations in the [PSR]." The district court suggested what it thought was the correct amount of restitution and asked the parties if it was correct. The State responded that pursuant to the plea agreement the actual amount was higher. The court then asked for the total amount of child support owed, and the State indicated that as of "today's date" Mr. Rodrigues owed $30,680.96 [1] to one of the mothers and $24,078.76 to the other. Adding those two figures the court came up with a total arrearage of $54,760.

¶ 8 Mr. Rodrigues did not object to the characterization or the amount of restitution that was presented to the district court. At the end of the hearing the district court sentenced Mr. Rodrigues to an "indeterminate term [of] zero to five years in the state penitentiary" and ordered that he "pay the sum of $54,600 [2] in restitution." The sentencing order entered by the district court indicates, in relevant part, that the court awarded "[a] restitution judgment in favor of the State of Utah ... in the amount of $54,600.00 which represents child support arrears for the Defendant's children with Jennifer Falsone and Michele Rodrigues through March 19, 2007."

¶ 9 After the district court entered the sentencing order, the State filed a motion to amend the restitution order under Utah Rule of Criminal Procedure 30(b) on the basis of a clerical error in the judgment. Mr. Rodrigues was not present for the hearing to consider the State's motion. At that hearing, the State indicated it "picked up the wrong computation" at sentencing and provided the court with an incorrect figure for the total restitution owed to Ms. Rodrigues. The State argued that the error was clerical and that the district court should amend the order of restitution pursuant to rule 30(b). Through counsel, Mr. Rodrigues argued that (1) the district court lacked jurisdiction to amend the restitution order and (2) amending the restitution order would violate due process. The district court granted the State's motion and increased the total amount of restitution from $54,600 to $65,403.66, reasoning that there had been a misstatement of what was actually owed and that the increased restitution conformed to the intent of the parties under the plea agreement.

¶ 10 Mr. Rodrigues appeals the district court's decision to amend and increase the total amount of restitution. This appeal was originally before the court of appeals, which then certified it to us. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b) (2008).

## STANDARD OF REVIEW

¶ 11 Whether the district court had jurisdiction to amend and increase its initial order of restitution requires us to interpret rule 30(b) of the Utah Rules of Criminal Procedure. "[T]he interpretation of a rule of procedure is a question of law that we review for correctness." *Brown v. Glover*, 2000 UT 89, ¶ 15, 16 P.3d 540.

---

1. The $30,680.96 amount represented a combination of Mr. Rodrigues's obligations to Jennifer Falsone for $19,778.44 and to the State for $10,902.52. The State does not challenge the district court's restitution order with respect to the $30,680.96 figure. Rather, it indicates that this figure is correct and accurately represents the total amounts owed from May 1, 1999, through March 19, 2007, the date of sentencing.

2. The district court did not provide an explanation for dropping $160 from the overall amount it initially calculated using the figures provided by the State, and we do not find the change factually relevant to the issue presented on appeal.

¶ 12 Whether the entry of the district court's amended order of restitution violates protections afforded by the Double Jeopardy Clause or the Due Process Clause presents constitutional issues that are questions of law that we review for correctness. *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

## ANALYSIS

### I. THE DISTRICT COURT HAD JURISDICTION TO AMEND ITS INITIAL ORDER OF RESTITUTION

■■■ ¶ 13 Whether the district court had jurisdiction to amend and increase its initial order of restitution hinges on whether the district court was correcting a clerical error pursuant to rule 30(b) of the Utah Rules of Criminal Procedure. Once a court imposes a valid sentence and final judgment is entered, the court ordinarily loses subject matter jurisdiction over the case. *See State v. Montoya*, 825 P.2d 676, 679 (Utah Ct.App.1991). However, pursuant to rule 30(b), "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court *at any time*" Utah R.Crim. P. 30(b) (emphasis added). We hold that rule 30(b) applies, and therefore the district court had jurisdiction to amend its restitution order.

■■■ ¶ 14 The purpose of rule 30(b) and its civil counterpart, rule 60(a) of the Utah Rules of Civil Procedure,[3] is to correct clerical errors so that the record reflects what was actually "done or intended." *Bishop v. GenTec, Inc.*, 2002 UT 36, ¶ 30, 48 P.3d 218 (internal quotation marks omitted). In our analysis under rule 30(b), we draw a distinction between clerical errors and judicial errors; "[t]he distinction ... depends on

whether [the error] was made in rendering the judgment or in recording the judgment as rendered." *Id.* ¶ 32 (internal quotation marks omitted). "A clerical error is one made in recording a judgment that results in the entry of a judgment which does not conform to the actual intention of the court. On the other hand, a judicial error is one made in rendering the judgment and results in a substantively incorrect judgment." *Thomas A. Paulsen Co. v. Indus. Comm'n*, 770 P.2d 125, 130 (Utah 1989). "To ascertain the clerical nature of the mistake, this Court will look to the record to harmonize the intent of the court with the written judgment." *State v. Lorrah*, 761 P.2d 1388, 1389 (Utah 1988). Finally, " '[i]n this broad approach to correctability ..., it matters little whether an error was made by the court clerk, the jury foreman, counsel, a party, or the judge himself;' " rather the court should focus on whether the error " 'is clearly a formal error that should be corrected in the interest of having judgment, order, or other part of the record reflect what was done or intended.' " *Bishop*, 2002 UT 36, ¶ 30, 48 P.3d 218 (quoting *Stanger v. Sentinel Sec. Life Ins. Co.*, 669 P.2d 1201, 1206 (Utah 1983)). Thus, our clerical error analysis generally focuses on (1) whether the order or judgment that was rendered reflects what was done or intended, (2) whether the error is the result of judicial reasoning and decision making, and (3) whether the error is clear from the record.[4]

### A. The Court Intended to Order Restitution in Accordance with the Plea Agreement

■■■ ¶ 15 "A clerical error is one made in recording a judgment that results in the entry of a judgment which does not conform

---

3. Utah R.Crim. P. 30(b) is nearly textually identical to Utah R. Civ. P. 60(a), and the "clerical error" analysis under both sections is often indistinguishable. *See State v. Moya*, 815 P.2d 1312, 1314 n. 3 (Utah Ct.App.1991) (noting that "review ... based on either rule [would] result[ ] in the same conclusion" in that case). Therefore, in making our determination under Utah R.Crim. P. 30(b), we also inform our analysis with case law applying Utah R. Civ. P. 60(a). Further, while there may be subtle distinctions in the application of the two rules, neither party has

briefed those distinctions, and we do not address them here.

4. The State recognizes that the error in the total amount of restitution is attributable to its misstatement to the district court during Mr. Rodrigues's sentencing but accurately argues that this is of no import. The relevant inquiry focuses on whether the error was in fact clerical rather than on who committed the error. *See Bishop*, 2002 UT 36, ¶ 30, 48 P.3d 218.

to the actual intention of the court." *Thomas A. Paulsen Co.*, 770 P.2d at 130. Indeed, "[t]he correction [of a clerical error] must be undertaken for the purpose of reflecting the actual intention of the court and parties." *Lindsay v. Atkin*, 680 P.2d 401, 402 (Utah 1984); *see also Bishop*, 2002 UT 36, ¶ 32, 48 P.3d 218 (amending jury verdict because "accurately recording the intent of the jury in its calculation of the damage award constitutes correction of a clerical error, not a judicial error"). While the intent of the parties may be taken into account in the clerical error analysis, it is ultimately the intent of the court or fact finder that is binding.

¶ 16 The State argues that the original order of restitution as recorded did not conform with the intent of the district court and the parties. Specifically, the State argues that when the district court entered the original order of restitution, the intent of the district court as well as both parties was to order Mr. Rodrigues to pay restitution in accordance with the plea agreement. In support of this position, the State directs our attention to (1) the plea agreement, (2) the PSR, (3) the dialogue between the parties and the court at the sentencing hearing, and (4) the district court's original order of restitution.

¶ 17 In May 2005, Mr. Rodrigues entered into a plea agreement wherein he agreed to pay restitution "in the amount of the total amount of child support arrears owed for the support of [his] children on both counts from May 1, 1999 through the date of sentencing." The plea agreement further specified that Mr. Rodrigues agreed to calculate child support at the rate of "$617.00 per month ($289.00 to Jennifer Falsone and $328.00 to Michele Rodrigues)" plus interest. At the time Mr. Rodrigues entered into the plea agreement his sentencing date was set for July 11, 2005. Mr. Rodrigues, however, failed to appear and instead left the state. Mr. Rodrigues was not actually sentenced until more than a year and a half later on March 19, 2007.

¶ 18 The PSR confirms that Mr. Rodrigues owed $289 per month to Ms. Falsone and $328 per month to Ms. Rodrigues. The PSR further indicates that the State sought restitution "in the total amount of child support arrears ... owed for both families from May 1, 1999, through the date of sentencing" and "[a]s of February 2, 2007, that amount totals $63,507.71." While the PSR does not include the total amount owed from May 1, 1999, through March 19, 2007, the actual date of sentencing, it indicates the State's intent to seek restitution through the date of sentencing in conformity with the plea agreement. During the sentencing hearing, Mr. Rodrigues unambiguously indicated that he concurred with the recommendations in the PSR.

¶ 19 The district court's statements at the sentencing hearing further demonstrate that it intended to order restitution in accordance with the plea agreement. The court recited the amount of restitution it believed Mr. Rodrigues owed. The State indicated that the total was "actually even higher," because child support payments continued to accrue through "today's date" pursuant to the "plea agreement." Mr. Rodrigues did not object to the State's characterization of the total amount of child support owed. The court then asked, "[s]o what do you show as the total?" In response, the State indicated that Mr. Rodrigues owed "$30,680.96 ... for one, and $24,078.76 ... for the other." The court added the two figures and stated, "[s]o it looks like the total arrearage is $54,760." Clearly the district court was under the impression that the $54,760 figure represented the amount of child support arrears owed to both of Mr. Rodrigues's ex-wives from May 1, 1999, through March 19, 2007, pursuant to the plea agreement.

¶ 20 The district court's original restitution order also supports a finding that the court intended to order restitution through March 19, 2007, the date of sentencing, in conformity with the plea agreement; it states that the award of restitution "represents child support arrears for [Mr. Rodrigues's] children with [Ms.] Falsone and [Ms.] Rodrigues through March 19, 2007."

¶ 21 We are further persuaded that the district court intended to order restitution in conformity with the plea agreement by the fact that the amount of restitution ordered for Ms. Falsone accurately represents Mr.

Rodrigues's child support obligations under the plea agreement, i.e. child support arrears owed to Ms. Falsone from May 1, 1999, through March 19, 2007, the date of sentencing, while the amount of restitution ordered for Ms. Rodrigues does not conform to Mr. Rodrigues's obligations under the plea agreement. We find it unlikely that the court, without reason, would choose to order an inequitable amount of restitution for two similarly situated victims.

¶ 22 In light of the plea agreement, the PSR, the exchange during the sentencing hearing, and the court's original restitution order, it is clear that the intent of the district court and the expectation of the parties was that Mr. Rodrigues would pay restitution through the date of sentencing in accordance with the plea agreement. The figure provided by the State as restitution owed to Ms. Rodrigues did not accurately represent Mr. Rodrigues's child support arrears through the date of sentencing as set forth in the plea agreement. Therefore, the order of restitution as recorded did not conform to the actual intention of the court and this prong of our analysis suggests that the error was clerical. We now address whether the error was the result of judicial reasoning and decision making.

### B. The Error Was Not the Direct Result of Judicial Reasoning and Decision Making

¶ 23 The error in the amount of restitution owed was not the product of judicial reasoning and determination; rather the error was merely one of calculation. "[A] judicial error is one made in rendering the judgment and results in a substantively incorrect judgment." *Thomas A. Paulsen Co.,* 770 P.2d at 130. We have specifically defined a judicial error as "the deliberate result of the exercise of judicial reasoning and determination." *Lorrah,* 761 P.2d at 1389 (internal quotation marks omitted). Unlike clerical errors, a district court does not have jurisdiction to correct a judicial error after it has entered a valid sentence.

¶ 24 Mr. Rodrigues argues that pursuant to Utah Code section 77–38a–302, (the "Restitution Statute") the error must have been

the product of judicial reasoning and decision making and therefore rule 30(b) cannot apply. Mr. Rodrigues does not argue that the district court erred in applying or failing to comply with the requirements of the Restitution Statute. He simply argues that its application required judicial reasoning, and therefore the amount of restitution ordered in this case cannot be a clerical error.

¶ 25 We agree that the district court's determination of restitution required judicial reasoning and decision making. However, we disagree that the misstatement of the restitution amount and the subsequent order of restitution based on the misstatement were the deliberate result of that judicial reasoning and decision making. In other words, as demonstrated below, the district court's reasoning and decision making did not result in or lead to the error in question.

¶ 26 Although a district court has discretion to adjust the amount of restitution agreed to by the parties in a plea agreement, any adjustment must fall within the "conduct for which the defendant has agreed to make restitution as part of [the] plea agreement." Utah Code Ann. § 76–3–201(4)(a) (2008); *see also State v. Bickley,* 2002 UT App 342, ¶ 9, 60 P.3d 582. Mr. Rodrigues appeared before the district court for sentencing based on a plea agreement. As part of the plea the parties agreed that the amount of restitution would accrue from May 1, 1999, through the date of sentencing. In accepting the figures presented by the State, the district court engaged in judicial reasoning and decision making and determined to impose the amount of restitution agreed to by the parties in the plea agreement instead of some other amount. The court then erroneously entered an amount of restitution that did not conform to its judicial determination.

¶ 27 The error in the amount of restitution was not a deliberate result of the court's judicial determination. Instead, the error resulted from a miscalculation and subsequent misstatement by the State in providing the court with an incorrect figure for the amount of restitution owed to Ms. Rodrigues. Further, Mr. Rodrigues never objected to the characterization of the amount of restitution and in fact concurred with the

recommendations in the PSR, both of which demonstrate the court's intent to order restitution in conformity with the plea agreement.

¶ 28 The error in this case was not the deliberate result of judicial reasoning and decision making, and was therefore not a judicial error. Rather, the error resulted from a miscalculation and subsequent misstatement on the part of the State. We accordingly turn to the final prong of our analysis-whether the error is clear from the record.

### C.   The Error Is Clear from the Record

▮▮▮▮▮   ¶ 29 The error in the amount of restitution the district court originally ordered is clear from the record. "To ascertain the clerical nature of the mistake, this Court will look to the record to harmonize the intent of the court with the written judgment." *Lorrah,* 761 P.2d at 1389.  An error is clerical when it is a "mistake or omission mechanical in nature which is apparent on the record" *Stanger,* 669 P.2d at 1206 (internal quotation marks omitted).

¶ 30 Mr. Rodrigues argues that the error is not apparent on the record, and therefore rule 30(b) was an improper vehicle for amending the judgment. We disagree and find that the error in this case is apparent based on a review of the record prior to judgment.

¶ 31 The plea agreement states that restitution will be paid "in the amount of the total amount of child support arrears owed for support of [Mr. Rodrigues's] children on both counts from May 1999 through the date of sentencing." It further states that "the restitution judgment shall accrue interest as set forth in Utah Code Ann. § 77–38a–401(4) (2001)." The plea agreement also provides the amount of support Mr. Rodrigues agreed to pay, per month, for each ex-wife: $289 to Ms. Falsone and $328 to Ms. Rodrigues. Therefore, the basic formula to determine

the correct amount of restitution can be found within the plea agreement.

¶ 32 Additionally, the PSR provides accurate totals of restitution owed from May 1999 up until February 2, 2007, one month before Mr. Rodrigues's sentencing.[5] The PSR indicates that as of February 2, 2007, Mr. Rodrigues owed Ms. Rodrigues $34,317.82 in restitution. Thus clearly the $24,078.76 requested by the State at the sentencing hearing as restitution for Ms. Rodrigues was in error.

¶ 33 Based on a review of the plea agreement, the PSR, and the previously determined intent of the court to order restitution in conformity with the plea agreement, we find that the error is clear from the record.

¶ 34 In conclusion, the original order of restitution as recorded does not accurately reflect what was intended by the court or expected by the parties. Furthermore, the error in this case was not the deliberate result of the exercise of judicial reasoning and determination. Rather, it was an error of computation, unintentionally initiated by the State. Finally, the clerical mistake in the calculation of restitution is clear from the record. We therefore hold that the error in question was merely clerical under rule 30(b), and the district court had jurisdiction to amend the order of restitution to reflect what was intended.

### II.   THE AMENDED ORDER OF RESTITUTION DOES NOT VIOLATE PROTECTIONS AGAINST DOUBLE JEOPARDY OR MR. RODRIGUES'S RIGHT TO ALLOCUTION

¶ 35 Mr. Rodrigues argues that amending the order of restitution deprived him of his protections against double jeopardy and violated his due process rights to presence and allocution. We address both of Mr. Rodrigues's contentions beginning with his double jeopardy claim.

---

5.   Under the section entitled "Victim Impact Statement and Restitution," the PSR states:

Victim Restitution will be sought in the total amount of child support arrears (principal and interest) owed for both families from May 1, 1999, through the date of sentencing.  At the

time the plea was entered, the restitution totaled $49,000.49.  As of February 2, 2007, that amount totals $63,507.71 ($34,317.82 to Michele Rodrigues, $19,433.72 to Jennifer Falsone, and $9,756.17 to the State of Utah for reimbursement of public assistance).

### A. Correction of a Clerical Error Does Not Ordinarily Violate Double Jeopardy

¶ 36 Clerical errors do not ordinarily infringe on protections against double jeopardy because the correction of the error rarely upsets a defendant's expectation of finality in the original proceedings. The Fifth Amendment of the United States Constitution provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Double Jeopardy Clause embodies three separate protections: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense." *Bernat v. Allphin*, 2005 UT 1, ¶ 11, 106 P.3d 707. Here, Mr. Rodrigues argues that the trial court violated his protection against multiple punishments for the same offense when it in essence resentenced him by amending and increasing the original order of restitution. However, "resentencing per se does not implicate the double jeopardy protection from multiple punishments." *State v. Maguire*, 1999 UT App 45, ¶ 11, 975 P.2d 476. Rather, "the Double Jeopardy Clause 'only proscribes resentencing where the defendant has developed a legitimate expectation of finality in his original sentence.'" *Id.* ¶ 8 (quoting *Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir.1997)); *see also, United States v. DiFrancesco*, 449 U.S. 117, 137–39, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir.2005).

¶ 37 While this court has not yet considered whether the Double Jeopardy Clause prevents the correction of a clerical error that amends a criminal sentence, other jurisdictions have done so and have held that the correction does not violate principles of double jeopardy when there is no legitimate expectation of finality in the sentence. *See Gallinat v. State*, 941 So.2d 1237, 1238–42 (Fla.Dist.Ct.App.2006)(holding that correction of trial court's miscalculation giving credit to defendant for time not actually served did not violate double jeopardy because defendant had no legitimate expectation of finality); *People v. Minaya*, 54 N.Y.2d 360, 445 N.Y.S.2d 690, 429 N.E.2d 1161, 1163–64 (1981)(holding that correction of sentence to conform with plea agreement did not violate double jeopardy because the defendant had no legitimate expectation of finality). We find the *Minaya* opinion particularly persuasive.

¶ 38 In *Minaya*, the defendant pled guilty to one count of attempted robbery in exchange for an eight-year prison sentence. 445 N.Y.S.2d 690, 429 N.E.2d at 1162. At sentencing, the court indicated that it intended to follow the plea agreement, but then inadvertently sentenced the defendant to a three-year sentence. *Id.* Three months later the court learned of its error and issued a corrected sentence to reflect the eight-year sentence defendant had agreed to in the plea agreement. *Id.* On appeal, defendant argued that the correction violated double jeopardy. In holding that the amendment to the original sentence did not violate double jeopardy, the New York Court of Appeals reasoned that "a defendant who is mistakenly sentenced to a lesser term than he agreed to [does not] immediately upon commencing the sentence acquire a vested interest in the error so that it would be unfair, under the Double Jeopardy Clause, to correct the error" *Id.* 445 N.Y.S.2d 690, 429 N.E.2d at 1164.

¶ 39 In this case Mr. Rodrigues entered into a plea agreement whereby he agreed to pay restitution according to a specific formula set forth therein. While a sentencing court has discretion to accept or reject plea agreements, *see State v. Montiel*, 2005 UT 48, ¶ 1, 122 P.3d 571, the district court in this case intended to order restitution in accordance with the plea agreement. Shortly after the original order of restitution was issued, the State filed a motion seeking to correct the clerical error in the total amount of restitution owed. The district court granted the State's motion reasoning that there had been a misstatement of what was actually owed and the increased restitution merely reflected what the parties had agreed to under the plea agreement. Given these facts, we hold that Mr. Rodrigues had

no legitimate expectation of finality in the original order of restitution because it did not reflect what he had agreed to in the plea agreement. Because Mr. Rodrigues had no legitimate expectation of finality, the amended order of restitution does not violate protections against multiple punishments guaranteed under the Double Jeopardy Clause.

### B. Mr. Rodrigues's Due Process Right to Presence and Allocution Was Not Violated

¶ 40 Finally, Mr. Rodrigues argues that the amendment of the restitution amount violated his due process right to presence and allocution because he was not present at the hearing to amend the order of restitution. "The trial court may correct clerical mistakes in judgments at any time, with or without notice as the court may order." *State v. Lorrah,* 761 P.2d 1388, 1389 (Utah 1988). The right to presence and allocution does not apply when a court considers a motion to correct a clerical error. In such cases, the defendant's right to allocution is satisfied "in the first sentencing hearing," so long as the hearing was "held in [defendant's] presence" and defendant had an opportunity to speak. *Id.* at 1390.

¶ 41 Mr. Rodrigues was present and had the opportunity and did in fact speak at the original sentencing hearing. Therefore, his due process rights of presence and allocution were not violated when the district court held a hearing without his presence to amend the order of restitution based on a clerical error.

## CONCLUSION

¶ 42 Rule 30(b) of the Utah Rules of Criminal Procedures allows a court to correct clerical errors at any time. In this case we hold that the error in question was clerical because: (1) the intent of the district court and the parties was to order restitution in conformity with the plea agreement (2) the error was not the direct result of judicial reasoning and decision making, and (3) the error is clear from the record. Therefore the district court had jurisdiction to amend its order of restitution to reflect the amount Mr. Rodrigues actually owed.

¶ 43 Additionally, Mr. Rodrigues's claim that the amendment to the restitution amount violates his right against double jeopardy fails because he had no legitimate expectation of finality in the original order of restitution. Finally, the due process rights of presence and allocution do not apply when a court considers a motion to correct a clerical error.

¶ 44 We therefore affirm the district court's amended order of restitution.

¶ 45 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH'S opinion.