2017 UT App 76

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JASON MICHAEL SPEED,
Appellant.

Opinion
No. 20150011-CA
Filed May 4, 2017

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 101901272

Joel J. Kittrell and Kristina H. Ruedas, Attorneys
for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

ROTH, Judge:

¶1     Jason Michael Speed appeals the district court's denial of his motion for relief from judgment and his request for a restitution hearing. We affirm.

## BACKGROUND

¶2     In February 2010, Speed was charged with one count of theft by deception, a second degree felony. *See* Utah Code Ann. §§ 76-6-405, -412 (LexisNexis 2012). The information alleged that in his role as a supervisor at an "outsource service center for Verizon Wireless," Speed discounted "high-end" phones to nothing, had them sent to his address, and then resold them for

his own profit. The information indicated that the "amount discounted on the[] phones" Speed disposed of in this way was $123,153.

¶3 Speed pleaded guilty to one count of third degree felony theft by deception in August 2010. Before sentencing, the court ordered a presentence investigation report (PSI). The PSI included a recommendation that Speed be placed on probation for thirty-six months and pay restitution. The PSI specified $126,547 as the amount of restitution, a figure which Speed's employer told Adult Probation and Parole (AP&P) was the value of the cell phones Speed had taken and sold.

¶4 In an October 2010 hearing, Speed was sentenced to an indeterminate prison term of zero to five years, which the court suspended. He was placed on probation for thirty-six months and was ordered to comply with certain conditions of probation, including paying restitution.

¶5 During the sentencing hearing, defense counsel addressed the court regarding the amount of restitution. He asserted that Speed had "taken full responsibility" for what he had done and had even "gotten two jobs . . . in anticipation of having a large financial obligation related to this case." Speed admitted, however, that as of the date of the hearing, he had set aside nothing to pay for restitution and had instead "been trying to catch up on previous debt." Counsel stated that Speed was "still a little bit in question as to whether or not that full [restitution] amount was attributable to him," and that even though Speed unlawfully appropriated many phones, the restitution amount recommended by AP&P represented "the full retail value of these phones," which was an amount counsel asserted "almost nobody ever pays."

¶6 The sentencing court expressed concern "that [Speed had] done nothing to address the issue of restitution that exceeds $126,000." The court was particularly troubled that Speed had made no effort at repayment when he was "more responsible, by

far, than any of [his] co-defendants,"[1] given that "[t]en, 15 times . . . more restitution" was attributable to him. During the sentencing portion of the hearing, the court ordered Speed to serve a prison term of zero to five years but suspended all but the time already served and ordered him to complete thirty-six months of probation supervised by AP&P. After setting forth a number of terms of Speed's probation, the court concluded, "Pay restitution in the amount of $126,547." The court advised defense counsel that it would "let [him] approach later" about restitution but explained to Speed,

> I want to get this on rather than deferring it. I want you to make monthly payments every single month toward the restitution. I will let you work with AP&P towards that, but I want them to immediately start getting reimbursed for their losses . . . . I really expect you to make significant advances towards dealing with this enormous restitution, that you need to make your victim whole.

¶7    Defense counsel then stated that he had spoken with the State "about having a restitution hearing to determine what court-ordered and total restitution would be." Following this remark, an exchange between defense counsel and the court ensued:

> THE COURT: Well, get closer. If there are disputes[,] I set a lot of these restitution hearings because it's murky. So what I want you to do is file a motion for restitution.
>
> [DEFENSE COUNSEL]: Okay.

---

1. Three others were similarly charged in connection with the scheme. Their cases are not at issue in this appeal.

THE COURT: And with some specifics about what I can look at before we get to the restitution hearing—

[DEFENSE COUNSEL]: Right.

THE COURT:—and nobody knows anything.

[DEFENSE COUNSEL]: Yeah. I think—it's not a complicated—I don't think it's going to be a complicated hearing. The only issue is really addressing his availability to pay and those resources he has available to pay this whole amount.

THE COURT: Well, let's get all of that documentation then.

[DEFENSE COUNSEL]: Okay.

THE COURT: I will set it for hearing.

[DEFENSE COUNSEL]: Okay. And, Your Honor, how long do we have to file that motion, just so—

THE COURT: Whenever you want.

[DEFENSE COUNSEL]: Okay. Thank you.

¶8    The original sentence, judgment, and commitment (the original judgment) entered after the sentencing hearing in October 2010 included among the probation conditions the statement, "Pay Restitution," but no dollar amount was identified. However, in February 2012, the court amended the judgment to identify the restitution amount as $126,547 (the corrected judgment), the amount recommended in the PSI and specified by the court in its verbal order to "[p]ay restitution in the amount of $126,547" at the sentencing hearing. The corrected

judgment also added that restitution was "in behalf of" Speed's employer.

¶9 Subsequent to the sentencing hearing, AP&P filed three progress reports recommending that Speed's probation be closed as successful. The first two were filed four and nine months after the hearing, respectively, and the court denied both. The last report filed in September 2013 listed $126,547 as the amount ordered in restitution and indicated that as of September 24, 2013, Speed had made payments of only $1,418. Upon receipt of the third report, the court notified the parties that they had fourteen days to submit "any objections or other input regarding AP&P's recommendation" to close Speed's probation. Neither side responded, and on October 16, 2013, the court ordered Speed's probation terminated. The court noted "that because restitution is still outstanding, termination cannot be successful" and referred the remaining restitution to the Office of State Debt Collection.

¶10 Two weeks later, the court received a letter from Speed requesting a restitution hearing. In the letter, Speed stated that he had never had a restitution hearing and that his counsel never informed him of his entitlement to one. He asserted that he "[had been] on probation for eighteen months when [he] received [his] first notice with an amount owed for restitution," and by that point, over $7,000 in interest had accrued. He requested a hearing so that the court could "review [his] ability to pay."

¶11 New defense counsel filed a motion for relief from the judgment and a request for a restitution hearing. In the motion, Speed asserted that relief was justified under rule 60(b)(4) because the judgment awarding restitution was void. *See* Utah R. Civ. P. 60(b)(4) (providing that a "court may relieve a party or its legal representative from a judgment, order, or proceeding" if "the judgment is void"). Speed made two claims. First, he argued that the order was void because, as a jurisdictional matter, the restitution statute requires that court-ordered

restitution be entered at "either the time of the sentence or within one year after sentencing," and he claimed that the sentencing court "did not determine and enter court-ordered restitution until" the corrected judgment, "more than one year after [he] was sentenced." Second, Speed argued that "his right to due process" was infringed, claiming that, because the State "did not file a request for restitution," he "never received notice of the proposed restitution amount and an opportunity to be heard" "prior to the restitution amount being entered." As a result, he requested that the court either strike the restitution order or re-open his case and hold a full restitution hearing.

¶12    At a subsequent hearing, the district court denied Speed's motion for relief from judgment and ordered that "the restitution amount will remain as it is and will remain with Utah State Debt Collection." As to the jurisdiction issue, the court determined that, based upon the transcript of the sentencing hearing, "the court did order restitution as part of the sentence . . . in the amount of $126,547." The court also found that the omission of the exact number from the original judgment was essentially a clerical error and that the corrected judgment accurately shows "the restitution that was ordered on the day of [the] sentencing [hearing]." Accordingly, the court rejected Speed's argument that the judgment was void on jurisdictional grounds.

¶13    Similarly, the court rejected Speed's request for a restitution hearing on the basis that he had been denied due process, finding that he had notice of the amount of restitution sought and had been provided opportunities to be heard. The court noted in particular that the AP&P report indicated that the amount of loss attributed to Speed was $126,547, the exact amount awarded in restitution. It noted that "[t]here was a restitution amount ordered" at sentencing and that the exact amount of restitution so ordered was included in the third AP&P progress report, which also noted that Speed had made payments of approximately $1,400 toward that amount. Finally, the court noted that, although Speed had received notice of the

restitution amount on multiple occasions, "other than the colloquy at sentencing, nothing was made of the restitution" "until well after the case was closed." In particular, the district court noted that after receiving AP&P's recommendation that probation be terminated, the court had notified the parties in writing, asking whether any party objected to the unpaid balance of restitution and interest being referred to the Office of State Debt Collection, and Speed had filed no objection. The court therefore determined that Speed had "waived any issue regarding restitution," and it denied his request for a restitution hearing.

¶14    Speed appeals from the district court's denial of his post-judgment motion. We affirm.

ISSUES AND STANDARDS OF REVIEW

¶15    Speed argues that the district court[2] abused its discretion when it denied his post-judgment rule 60(b) motion. "Normally, the district court's denial of a rule 60(b) motion is reviewed for abuse of discretion." *Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 25, 347 P.3d 394. However, Speed's rule 60(b) motion requested relief under subsection (b)(4), and a district court "has no discretion with respect to a void judgment because the determination that a judgment is void implicates the court's jurisdiction." *Id.* As a result, "the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district

---

2. Different judges presided at the sentencing hearing in 2010 and the later hearing in 2014 regarding Speed's motion for relief from judgment and request for a restitution hearing. For convenience, we refer to the sentencing hearing judge as "the sentencing court," and the later judge reviewing the post-judgment motion as "the district court."

court." *Id.* (brackets, citation, and internal quotation marks omitted).

ANALYSIS

I. The Scope of Review is Limited.

¶16    On appeal, Speed contends he is entitled to relief from the district court's denial of his post-judgment motion because the restitution order was not entered within the jurisdictional time frame established by the restitution statute. Speed argues the sentencing court erroneously required defense counsel to file a motion before scheduling further restitution proceedings in contravention of the hearing requirements of the restitution statute and the State did not sufficiently prove that he caused the amount of loss claimed against him. He alternatively argues that his trial counsel was ineffective for failing to file the restitution motion requested by the sentencing court.

¶17    Our ability to consider Speed's claims is limited by the procedural context in which they arose. This appeal follows from the district court's denial of his post-judgment motion for relief. Speed did not file a direct appeal from the original judgment or the corrected judgment. The original judgment was filed in October 2010 and the corrected judgment in February 2012, but no appeal was taken from either, and by the time Speed filed his post-judgment motion in April 2014, the time for filing an appeal had long since passed.[3] *See* Utah R. App. P. 4(a) (providing that, "[i]n a case in which an appeal is permitted as a matter of right from the trial court to the appellate court, the notice of appeal . . .

_____

3. We express no opinion on whether Speed could have filed a direct appeal from the corrected judgment. For the purposes of this decision, it is enough to note that the time for filing an appeal from either judgment has passed.

shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from").

¶18 As a result, Speed is limited to challenging the district court's denial of his request for post-judgment relief. In his post-judgment motion, Speed made two arguments to the district court—that the restitution order was void under rule 60(b)(4) for lack of jurisdiction, and that the restitution obligation should be re-opened for a restitution hearing because he was denied his due process rights of notice and an opportunity to be heard.

¶19 For purposes of this appeal, we consider both arguments to be requests for relief from a void judgment under rule 60(b)(4).[4] A successful rule 60(b)(4) request for relief provides relief from judgments entered without constitutionally required due process as well as those entered without jurisdiction. *See Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶¶ 26–27, 347 P.3d 394 (explaining that rule 60(b)(4) provides relief from judgments that are rendered without "jurisdiction of the subject matter or parties, or the judgment was entered without the notice required by due process," which means "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (citations and internal quotation marks omitted)). Below, Speed expressly relied on rule 60(b)(4) as the basis for his jurisdictional argument, and his request for a restitution hearing is in

---

4. Speed filed his rule 60(b) motion nearly three and a half years after the sentencing court entered the original judgment. Although generally rule 60(b) motions must be filed "not more than 90 days after entry of the judgment or order" or "within a reasonable time," Utah R. Civ. P. 60(c), "where the judgment is void the time limitations of rule 60(b) have no application," *Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 24, 347 P.3d 394 (brackets, ellipsis, citation, and internal quotation marks omitted).

substance a request for relief from a judgment rendered void by denial of fundamental due process. *See Frito-Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 27, 222 P.3d 55 (explaining that "courts are to look at the substance of a motion, not merely its title, to determine its validity"). For instance, he asserted that he was entitled to have the restitution amount recalled from the Office of State Debt Collection and his case re-opened for a restitution hearing because he "never received notice of the proposed restitution amount" before it was entered or "an opportunity to be heard" on the issue and, as a result, "his right to due process [was] infringed." And at the hearing on the post-judgment motion, his counsel argued that Speed had not waived his right to a hearing because "there was no request for restitution ever filed by the State," he did not have "actual notice . . . of a restitution amount being sought in a hearing," and he did not receive "legal notice . . . notifying him that he had an opportunity to challenge amounts that were entered by the court pursuant to the presentence report."

¶20   As we explain further below, however, an appeal from a denial of a rule 60(b) motion "is narrow in scope," and "does *not*, at least in most cases, reach the merits of the underlying judgment from which relief was sought." *Franklin Covey Client Sales, Inc. v. Melvin*, 2000 UT App 110, ¶ 19, 2 P.3d 451 (citation and internal quotation marks omitted); *accord Fisher v. Bybee*, 2004 UT 92, ¶¶ 10–11, 104 P.3d 1198. Thus, to ensure that this appeal "does not provide an alternative vehicle for challenging the merits of a judgment that are more properly addressed through normal appellate review," *see Migliore*, 2015 UT 9, ¶ 29, our review is limited to the district court's denial of the relief Speed sought under rule 60(b)(4) to set aside the restitution order as void for lack of jurisdiction and as a violation of his right to procedural due process. This means that, to the extent that the issues Speed raises on appeal involve errors by the court or his counsel that do not implicate the fundamental validity of the restitution order, we will not address them. His relief from errors of that sort lay in a direct appeal.

¶21   We first consider Speed's jurisdictional argument, and then his due process claim. We conclude by addressing his ineffective assistance of counsel claim.

## II. The Restitution Order Is Not Void for Lack of Jurisdiction.

¶22   Utah Code section 77-38a-302 provides that "[w]hen a defendant is convicted of criminal activity that has resulted in pecuniary damages, . . . the court shall order that the defendant make restitution to victims of crime." Utah Code Ann. § 77-38a-302(1) (LexisNexis 2008).[5] "In determining restitution, the court shall determine complete restitution and court-ordered restitution." *Id.* § 77-38a-302(2). Complete restitution is the "restitution necessary to compensate a victim for all losses caused by the defendant." *Id.* § 77-38a-302(2)(a). To determine complete restitution, the court must consider, among other things, "the cost of the damage or loss if the offense resulted in damage to or loss or destruction of property of a victim." *Id.* § 77-38a-302(5)(b)(i).

¶23   Court-ordered restitution, on the other hand, is "the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence." *Id.* § 77-38a-302(2)(b). In determining court-ordered restitution, the court must address the defendant's ability to pay, which includes consideration of "the financial resources of the defendant" and "the burden that payment of restitution will impose," as well as "the rehabilitative effect on the defendant of the payment of restitution and the method of payment" and "other circumstances which the court determines may make restitution inappropriate." *Id.* § 77-38a-302(5)(c)(i)–(iv). Court-ordered restitution "may be identical in amount to complete restitution"—that is, the court may order a defendant to pay in restitution the full amount of the loss attributable to the

_____

5. We refer to the version of Utah Code section 77-38a-302 that was in effect at the time Speed was charged.

defendant's criminal activity or a lesser amount, depending on the court's assessment of the applicable factors. *See State v. Thomas*, 2016 UT App 79, ¶ 4, 372 P.3d 87 (per curiam) (citation and internal quotation marks omitted).

¶24    During the time period pertinent to the issue in this case—sentencing through entry of the corrected judgment—the restitution statute contained a jurisdictional constraint on a sentencing court's authority to order restitution: court-ordered restitution must be determined "at the time of sentencing or within one year after sentencing."[6] Utah Code Ann. § 77-38a-302(2)(b), -302(5)(d)(i). In *State v. Poole*, 2015 UT App 220, 359 P.3d 667, we explained that, under the pre-amended statute, if a sentencing court did not order court-ordered restitution in a specific amount within the one-year time frame, it lost jurisdiction to make the order at all. *Id.* ¶¶ 19–21. In *Poole*, at the time of sentencing, the State had presented the court with only a preliminary assessment of the loss, and the court did not enter an order but instead agreed to hold the issue of restitution open for one year to permit the State to determine the final amount of loss. *Id.* ¶ 2. The State filed a motion for restitution barely within the year, but by the time the court entered its restitution order, fifteen months had passed since sentencing. *Id.* ¶ 4. We held that, because the restitution statute required restitution orders to be entered within one year of sentencing, and the district court did not order restitution in a specific amount until fifteen months afterward, the court lacked jurisdiction to enter the restitution order. *Id.* ¶¶ 20–22.

---

6. The definition of "court-ordered restitution" in Utah Code section 77-38a-302 was amended in 2016 to remove this time constraint. *See* Utah Code Ann. § 77-38a-302(2)(b) (LexisNexis Supp. 2016). Court-ordered restitution is now described as "the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence." *Id.* Neither party disputes that the previous version of the statute applies here.

¶25    Citing *Poole*, Speed argues that the sentencing court here "did not order a certain amount of restitution within one year of sentencing," as the restitution statute required. Specifically, he asserts that during the sentencing hearing the court failed to order that Speed pay any specific amount of restitution. Instead, he contends that the sentencing court decided only complete restitution and failed to determine the amount Speed would actually be required to pay as court-ordered restitution. Likening the circumstances of his case to those in *Poole*, he also contends that no specific restitution amount was ordered until the corrected judgment was entered sixteen months after the original judgment—beyond the jurisdictional limit. Speed contends that the corrected judgment's restitution order is therefore void.

¶26    We agree with the district court, however, that the sentencing court "order[ed] restitution as part of the sentence . . . in the amount of $126,547" and that the failure to include the exact amount of restitution in the original judgment amounted to a clerical error.

¶27    During the sentencing hearing, the court suspended Speed's prison sentence and placed him on probation for thirty-six months, to be supervised by AP&P. Among the conditions of Speed's probation that the court stated on the record was, "Pay restitution in the amount of $126,547." Prior to the hearing, the court had received the PSI, which contained information about Speed's employment, financial, educational, and current living situations, as well as the exact amount of loss the victim attributed to Speed's criminal actions—$126,547. At the beginning of the hearing, the court verified that both parties had reviewed the PSI. And during the hearing, the court focused on the restitution issue, expressing its concern that, at the time of sentencing many months after the events, Speed had "done nothing to address the issue of restitution," despite the fact that he was "more responsible, by far, than any of [his] co-defendants." Both defense counsel and Speed himself provided additional information regarding Speed's income prospects and

family situation. And after delivering its oral order that Speed pay $126,547 in restitution, the court explained to Speed and defense counsel that, although it would consider further arguments about the restitution "later," it "want[ed] to get this on rather than deferring it" and that it expected Speed to "immediately" begin making "payments every single month toward the restitution."

¶28 Given the sentencing court's explicit order of restitution and the tenor of the court's interchange with Speed and his counsel, we are not persuaded that the focus on restitution during the sentencing hearing amounted to a mere discussion in which the court determined only complete restitution, without an actual order that Speed pay that amount as part of his criminal sentence. To the contrary, the court plainly ordered Speed to pay restitution in a specific sum as part of his criminal sentence; by its terms this amounts to court-ordered restitution. *See* Utah Code Ann. § 77-38a-302(2)(b) (LexisNexis 2008) (defining court-ordered restitution as "the restitution the court having criminal jurisdiction orders the defendant to pay as a part of the criminal sentence at the time of sentencing"); *see also State v. Laycock*, 2009 UT 53, ¶ 30, 214 P.3d 104 (noting that court-ordered restitution may be ordered in an amount identical to the amount of loss attributable to the defendant's criminal activities). Although Speed argues that the court's willingness to "let [defense counsel] approach later" regarding any disputes about the amount of restitution should be interpreted as undermining the directive force of the court's statement, "Pay restitution in the amount of $126,547," we conclude that the unequivocal nature of that statement and the court's subsequent admonition that Speed "immediately" begin making monthly payments to address the "enormous restitution" leave no room for doubt that the court ordered Speed to pay $126,547 in restitution at the sentencing hearing, even though the court opened the door to the possibility of an adjustment by permitting Speed to file a motion to revisit the amount if he were so inclined. Thus, Speed was ordered to pay a definite amount of restitution "as a part of [his] criminal sentence at the time of

sentencing," as the restitution statute required. *See* Utah Code Ann. § 77-38a-302(2)(b).

¶29 Furthermore, we agree with the district court's conclusion that the sentencing court's failure to include the amount in the original written judgment was merely a clerical error. The original written judgment included an express order that Speed "[p]ay restitution" as a condition of his probation but did not include an amount. Rule 30(b) of the Utah Rules of Criminal Procedure permits a court sua sponte to correct clerical mistakes in judgments or orders that arise "from oversight or omission." Such errors may be corrected "at any time." Utah R. Crim. P. 30(b). As our supreme court has explained, the purpose of this rule "is to correct clerical errors so that the record reflects what was actually done or intended" at the time. *State v. Rodrigues*, 2009 UT 62, ¶ 14, 218 P.3d 610 (citation and internal quotation marks omitted). "A clerical error, as contradistinguished from judicial error, is not the deliberate result of the exercise of judicial reasoning and determination," *State v. Lorrah*, 761 P.2d 1388, 1389 (Utah 1988) (per curiam) (citation and internal quotation marks omitted); rather, it is a mistake "made in recording a judgment that results in the entry of judgment which does not conform to the actual intention of the court," *Rodrigues*, 2009 UT 62, ¶ 14 (citation and internal quotation marks omitted). "Thus, our clerical error analysis generally focuses on (1) whether the order or judgment that was rendered reflects what was done or intended, (2) whether the error is the result of judicial reasoning and decision making, and (3) whether the error is clear from the record." *Id.* "To ascertain the clerical nature of the mistake, [we] will look to the record to harmonize the intent of the court with the written judgment." *Lorrah*, 761 P.2d at 1389.

¶30 The *Rodrigues* factors fully support the district court's conclusion that the omission of a specific restitution amount in the original judgment was the result of clerical error. First, it is apparent that the omission of a specific amount after the order "[p]ay restitution" resulted in an incomplete memorialization of

what the court ordered during the sentencing hearing. As we have discussed, even though the court expressed a willingness to reconsider the amount of restitution at some point in the future, the court nonetheless clearly ordered Speed to pay the sum of $126,547 as a condition of his probation. The corrected written judgment adds that precise number to the "[p]ay restitution" component of the final judgment. And between sentencing and the corrected judgment, it does not appear that any additional documentation or further restitution proceedings occurred that might have had some bearing on the inclusion of an exact amount in the corrected judgment; indeed, as the district court noted in the post-judgment hearing, "other than the colloquy at the sentencing [between defense counsel and the court], nothing was made of the restitution" "until well after the case was closed." Thus, the corrected judgment does no more than rectify a mistaken omission of the exact restitution amount the sentencing court ordered Speed to pay.

¶31    Second, it does not appear that the failure to include the specific amount in the original judgment was the result of judicial reasoning or decision making. *See Rodrigues*, 2009 UT 62, ¶ 14. A judicial error is "the deliberate result of the exercise of judicial reasoning and determination," while a clerical error is not. *Id.* ¶ 23 (citation and internal quotation marks omitted). Certainly, the sentencing court's initial decision to order Speed to pay restitution in the exact amount of the loss indicated in the PSI was undoubtedly a reasoned judicial decision. *See id.* ¶ 25 (explaining that a district court's "determination of restitution required judicial reasoning and decision making"). However, the omission of that number from the final judgment was merely an oversight in the preparation of the written document; the later amendment of the judgment to reflect the court's actual restitution decision itself required no exercise of judgment on the part of the court. Rather, adding the restitution amount that the sentencing court expressly determined during the hearing was a simple ministerial act to correct an omission "mechanical in nature." *Id.* ¶ 29 ("An error is clerical when it is a mistake or

omission mechanical in nature which is apparent on the record."(citation and internal quotation marks omitted)).

¶32 Finally, the "error . . . is apparent on the record." *See id.* (citation and internal quotation marks omitted). The sentencing court ordered that Speed pay restitution in a specific amount and the original judgment ordered him to "[p]ay restitution" but omitted the amount. Thus, the amendment of the restitution portion of the judgment to include the amount of restitution as $126,547 to be paid in behalf of Speed's employer simply conforms the judgment to the court's original intent, plainly expressed during the sentencing hearing. Accordingly, we conclude that the omission in the original judgment is clear from the record.

¶33 Therefore, we agree with the district court that the omission of the amount from the original judgment was not legally significant—during the sentencing hearing, the court unambiguously ordered that Speed pay $126,547, and the omission of that sum from the original judgment was unintentional. As a result, we conclude that the corrected judgment was merely a memorialization of what had already occurred and was not a restitution order made beyond the jurisdictional time limit of the restitution statute.

¶34 Nonetheless, Speed argues that the sentencing court could not have intended to mandate court-ordered restitution, because it did not have sufficient information regarding the required factors at the time of the sentencing hearing. In essence, he contends that the court intended to determine only complete restitution during the sentencing hearing but, due to a lack of information, reserved the amount of court-ordered restitution for future proceedings. He also argues that the State has "failed to prove [that] the amount of restitution was caused by [his] criminal activities" and that the sentencing court impermissibly placed the burden of proving causation on Speed.

¶35    To the extent Speed's arguments bear on the determination of whether the court intended to order him to pay $126,547 in restitution, we have already determined that the record of the hearing as a whole supports a conclusion that it did. *See supra* ¶ 28. And to the extent that he argues that the court committed error in this determination in the first place, the subject is beyond the scope of our review.

¶36    As we have explained, due to the procedural posture of Speed's appeal, our review is limited to whether the district court correctly denied his rule 60(b)(4) motion. We "narrowly construe the concept of a void judgment in the interest of finality," and "[a] judgment is not void merely because it is erroneous." *Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 26, 347 P.3d 394 (citation and internal quotation marks omitted). "Rather, a judgment is void only if the rendering court lacked authority," *id.* ¶ 29, meaning that "the court that rendered it lacked jurisdiction of the subject matter[] or parties or the judgment was entered without the notice required by due process," *Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 18, 270 P.3d 456 (citation and internal quotation marks omitted). As a result, we will not review legal errors that should have been raised in a direct appeal, "lest Rule 60(b) become a substitute for timely appeals." *See Fisher v. Bybee*, 2004 UT 92, ¶¶ 10–11, 104 P.3d 1198 (citation and internal quotation marks omitted).

¶37    Both of Speed's contentions—that the court lacked sufficient information to order restitution and that the causation determination was unsupportable—are assertions of legal error the court might have committed in arriving at its restitution order. Even if the court failed to consider the factors specified by the restitution statute, this sort of error does not implicate the court's fundamental jurisdiction to enter an order of restitution. *See Migliore*, 2015 UT 9, ¶ 29. Similarly, even if Speed is correct that there was insufficient evidence to support a conclusion that the restitution order accurately represented "the losses related to [his] criminal activities" or that the sentencing court impermissibly shifted to him the burden of proving the absence

of a causal relationship between his offense and the amount of restitution sought, the errors he identifies are legal, not jurisdictional. As a result, such challenges to the court's restitution order are beyond the scope of his appeal from the district court's rule 60(b)(4) decision, which was necessarily limited to whether the restitution order was void.

¶38     In sum, we conclude that the sentencing court ordered Speed to pay restitution in the amount of $126,547 during the sentencing hearing and that the omission of the exact amount from the original written judgment was merely a clerical error. As a result, unlike in *State v. Poole*, 2015 UT App 220, 359 P.3d 667, the sentencing court had jurisdiction when it made its restitution order at sentencing and when it entered judgment shortly thereafter. The restitution order is therefore not void on jurisdictional grounds.

 III. The Restitution Order Is Not Void on Due Process Grounds.

¶39     In his post-judgment motion, Speed also argued that he was entitled to a restitution hearing because, "prior to the restitution amount being entered," he was "given no notice" of the amount and he also never received "an opportunity to be heard" on the issue. He contended that his right to a restitution hearing was "triggered" when he requested a hearing by letter a couple of weeks after his case had been closed, *see* Utah Code Ann. § 77-38a-302(4) (LexisNexis 2008), and that "[b]ecause the restitution amount was part of a criminal sentence[] and failure to pay it jeopardized [his] liberty interest, his right to due process [had been] infringed." Accordingly, he requested that the court recall the remaining restitution owed from the Office of State Debt Collection and "re-open his case [to] hold a full restitution hearing."

¶40     As explained above, we cannot consider mere legal error in the procedural context of a motion to set aside a judgment under rule 60(b). We therefore consider this issue to be, in substance, a rule 60(b)(4) request for relief from a judgment

rendered void by violation of Speed's constitutional right of due process. Indeed, on appeal, Speed initially frames the issue as one implicating due process, as he did in the post-judgment motion. Quoting *State v. Gibson*, 2009 UT App 108, 208 P.3d 543, he contends that he "'has all the due process rights inherent in [a restitution] hearing,'" and contends that he was "never afforded a full and complete restitution hearing despite his objection to the amount of restitution." *See id.* ¶ 15. But apart from that, Speed's due process argument is, at its core, an argument that the sentencing court failed to comply with the hearing requirements of the restitution statute. Specifically, he contends we should reverse the district court's decision to deny his request for a restitution hearing because the sentencing court misapplied the restitution statute when it "require[d] defense counsel to file a motion for restitution prior to scheduling the hearing, [which] adds an additional requirement not contemplated by the statute," and that "[o]nce [the sentencing court] was aware that the defense and the prosecutor had a dispute over restitution, [it] should have scheduled the restitution hearing" immediately. He also argues it would be "unfair and contrary to Utah law to find that [he] waived his right to a restitution hearing by his counsel's failure to file a motion not contemplated by the statute, particularly when trial counsel was given an open-ended deadline to do so."

¶41   In determining whether a claimed denial of due process renders a judgment void, we consider whether the appellant received the "fundamental principles of procedural fairness"— that is, whether the appellant had adequate notice of the claims against him and an opportunity to respond. *State v. Weeks*, 2000 UT App 273, ¶ 8, 12 P.3d 110 (brackets, citation, and internal quotation marks omitted), *aff'd*, 2002 UT 98, 61 P.3d 1000; *see also Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 27, 347 P.3d 394.

¶42   For example, in *Migliore*, the appellant requested relief under rule 60(b)(4), claiming that he had been denied due process when summary judgment was entered against him

based on his failure to respond to the plaintiff's request for admissions, asserting that "he was deprived of notice, denied the opportunity to respond to [the appellee's claims], and denied a fair opportunity to submit evidence" on his own behalf. 2015 UT 9, ¶ 23. The supreme court did not inquire whether the applicable notice requirements of the rules of civil procedure were followed but limited its review to determining whether the appellant had received procedural due process—i.e., whether the appellant "had notice of [the appellee's] claims and an opportunity to respond." *Id.* ¶ 27. The court concluded that the appellant was not denied due process where the record showed that he had actual notice of the claims filed against him and had responded by filing motions and objections and making discovery responses, albeit limited ones. *Id.* ("Thus, the evidence on the record clearly indicates that [the appellant] had notice of [the appellee's] claims and an opportunity to respond."). The court otherwise declined to consider any of the "underlying merits of the original summary judgment determination." *Id.* ¶ 29.

¶43 Likewise, we will not consider the underlying merits of the sentencing court's restitution award or any related legal errors. Rather, we are instead limited to considering only whether Speed received adequate notice and the opportunity to be heard. We determine that Speed's alleged error does not rise to the level of a fundamental denial of due process sufficient to render the restitution award void. Even if the sentencing court misapplied the restitution statute by requiring Speed to file a motion with supporting documentation before it scheduled a restitution hearing—a question we do not decide—that alleged error did not fundamentally deprive Speed of notice related to the restitution ordered against him or an opportunity to be heard on the issue. *See State v. Hegbloom*, 2014 UT App 213, ¶¶ 14–19, 22, 362 P.3d 921 (concluding that an appellant collaterally attacking a civil protective order on the basis that it was void was not denied due process, even though he did not receive an evidentiary hearing before the order was entered against him, because he "received notice [of the protective order

proceeding], . . . stated his intention to seek an evidentiary hearing, and was instructed how to do so," but then failed to follow through); *cf. State v. Gomez*, 887 P.2d 853, 855 (Utah 1994) (concluding that the appellant's due process rights as to his sentence were not violated in relation to an ex parte communication between the court and the appellant's probation officer where the appellant was provided "all factual information upon which the court based his sentence," including "the purpose and substance of the [ex parte] communication," but then "failed to avail himself of the opportunity" to question the probation officer about the communication in an evidentiary hearing); *Joseph v. Salt Lake City Civil Service Comm'n*, 2002 UT App 254, ¶ 10, 53 P.3d 11 ("The fundamental requirement of due process is the opportunity to be heard, at a meaningful time and in a meaningful manner, and, when this opportunity is granted a complainant, who chooses not to exercise it, that complainant cannot later plead a denial of procedural due process." (emphasis, citation, and internal quotation marks omitted)).

¶44    Here, as in *Migliore*, it was clear during the sentencing hearing that Speed had notice of the amount of loss being claimed against him. The amount was contained in the PSI, which defense counsel stated he and Speed had reviewed, and the court stated the amount more than once during the hearing. It was also clear, as we have explained above, that Speed had notice that the sentencing court ordered him to pay restitution as a condition of his probation in the full amount of that loss.

¶45    Further, even assuming that the sentencing court violated the restitution statute when it required that Speed file a motion and provide additional documentation to facilitate a subsequent restitution hearing, the court afforded Speed the opportunity to be heard on the issue. And Speed has pointed to no evidence suggesting that, had he filed the motion in the manner invited by the sentencing court, the court would have denied him the requested hearing. *See Hegbloom*, 2014 UT App 213, ¶ 14 n.3 (noting, in response to the appellant's allegation that an order was void on the basis of a due process violation because he did

not receive an evidentiary hearing before it was entered, that the appellant did not assert that "had he objected to the commissioner's finding in the manner she prescribed, the district court would have denied him an evidentiary hearing"). To the contrary, during the sentencing hearing the court expressly afforded Speed the opportunity to challenge the amount of both complete and court-ordered restitution when it indicated that it would let defense counsel "approach later" regarding the restitution issue and stated that it would schedule the hearing once defense counsel filed the motion. And Speed has not directed us to any authority suggesting that the alleged failure to comply with the restitution statute's hearing requirements amounts to a procedural due process violation sufficient to void the restitution judgment entirely. *Cf. Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) ("[T]he question raised in a procedural due process challenge is whether the level of process afforded to the [appellants] passed constitutional muster, not whether [the appellee] followed statutes or regulations. [A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." (fourth alteration in original) (citation and internal quotation marks omitted)).

¶46    Thus, even if the sentencing court's request for a motion to be filed before scheduling further restitution proceedings was an error under the restitution statute, we are not persuaded that the restitution order was rendered in violation of Speed's constitutional guarantee of due process; Speed was given appropriate notice of the restitution claim and afforded an opportunity to be heard. *See Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 27, 347 P.3d 394. That Speed failed to thereafter avail himself of the opportunity provided or further pursue the restitution issue until well after the time for appeal had passed is not something that can be rectified through a rule 60(b)(4) due process challenge. *See id.* ¶¶ 26–29.

IV. Speed's Ineffective Assistance of Counsel Claim Is Not
Reviewable Here.

¶47    Finally, Speed argues that he received ineffective
assistance of counsel "when his trial counsel failed to properly
object to the amount of restitution and file a motion as requested
by the [sentencing court]." He claims that his trial counsel "knew
that [he] disputed the full amount of restitution and wanted a
hearing" and that the sentencing court expressly "directed [trial
counsel] to file a motion for restitution." He also claims that he
was prejudiced "by failing to receive his statutory right to a full
and complete restitution hearing, and from being burdened with
a debt of restitution that will be close to impossible for him to
pay off given his circumstances."

¶48    However, as we have discussed, the only basis for relief
from the restitution order that Speed asserted in his post-
judgment motion was a claim under rule 60(b)(4) that the order
was void for lack of jurisdiction because the sentencing court
had failed to enter a specific restitution amount until more than
a year after sentencing and because he did not have notice of the
amount or an opportunity to be heard. He did not assert that his
trial counsel's ineffectiveness was a basis for relief from the
sentencing court's judgment in his post-judgment motion. As a
result, because this claim relates to his trial counsel's
performance and was not raised as a basis for relief in his post-
judgment motion, it has not been preserved and is therefore
beyond the scope of our limited review. *See Seamons v. Brandley*,
2011 UT App 434, ¶¶ 2–3, 268 P.3d 195 (per curiam) (explaining
that "to preserve an issue for appeal, the issue must be presented
to the [district] court in such a way that the [district] court has an
opportunity to rule on that issue" and that "[t]he preservation
rule applies to every claim, including constitutional questions"
(citation and internal quotation marks omitted)).

¶49    In any event, Speed's ineffective assistance argument
appears to be simply an extension of his argument that the
sentencing court abused its discretion by requiring him to file a

motion with supporting documentation before affording him the statutory hearing—i.e., it is a claim of error premised upon the existence of a statutory right. Indeed, he argues that he was unable to exercise a "statutory right" due to his counsel's performance. He has not argued that his trial counsel's allegedly ineffective assistance amounted to a due process deprivation of constitutional significance or that the sentencing court's judgment is otherwise rendered void based upon the deficient representation. *See Migliore v. Livingston Financial, LLC*, 2015 UT 9, ¶ 26, 347 P.3d 394.

¶50    As a result, we decline to reach the merits of Speed's ineffective assistance of counsel argument, because it was not preserved in the district court and it is beyond the scope of this appeal.

CONCLUSION

¶51    Due to the procedural posture of this case, our review is limited to the district court's denial of Speed's post-judgment motion. Speed has not demonstrated that the sentencing court's restitution order was void under rule 60(b)(4) on jurisdictional or due process grounds—the only two grounds asserted in the motion—and he has therefore failed to demonstrate that the district court's denial of his motion to set the restitution order aside was improper. We therefore affirm.

_____