**2021 UT 70**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent*,

*v.*

ATHANASIOS CAPTAIN SEVASTOPOULOS, acting as the personal
representative of the Estate of KATHLEEN SEVASTOPOULOS,
*Petitioner*.

No. 20200157
Heard September 13, 2021
Filed December 23, 2021

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable James Blanch
No. 161904929

Attorneys:

Sean D. Reyes, Att'y Gen., William M. Hains, Asst. Solic. Gen.,
Salt Lake City, for respondent

Nathalie S. Skibine, Salt Lake City, for petitioner

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court
in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Kathleen Sevastopoulos made electronic transfers from her elderly parents' bank account to pay her credit card bills. Her parents hired an attorney, who in turn hired an accountant, to look into the transfers and seek to recover the funds. The attorney and accountant identified hundreds of unauthorized transfers and asserted claims against several credit card companies involved in these transactions. Ultimately, the attorney and accountant incurred fees in the amount of $40,000 and recovered $131,701.63 from the credit card companies.

¶2 The State charged Sevastopoulos with one count of felony theft and two counts of exploitation of a vulnerable adult. She pled guilty to misdemeanor counts of theft and theft by deception. In entering into this plea, Sevastopoulos signed a plea agreement indicating that the charges against her were based on conduct arising "[o]n or about January 17, 2015." The agreement also stated that Sevastopoulos had pled guilty to counts one and two, and the amended information had listed the offenses as occurring "on or about July 01, 2013 to January 17, 2015." And it further provided that Sevastopoulos would pay "any restitution that may be owed on charges that are dismissed as part of [the] plea agreement."

¶3 The district court sentenced Sevastopoulos to a term of 180 days in jail but suspended jail time in favor of probation on the condition of her payment of restitution. It later held an evidentiary hearing on the amount to be reflected in a restitution order. After hearing testimony from the parents, the parents' attorney and accountant, and a detective, and upon consideration of documentary evidence, the district court concluded that Sevastopoulos had proximately caused economic injury in the amount of $148,243.27 — an amount calculated by subtracting attorney fees, accountant fees, and money recovered from the credit card companies from the amount that Sevastopoulos was found to have stolen from her parents.

¶4 Sevastopoulos appealed. She challenged the decision to include the fees incurred by the parents' attorney and accountant in the restitution order. She also raised a series of objections to the inclusion of 219 electronic transfers in the calculation of the amount of her parents' losses, asserting that the State had failed to establish a factual basis for (a) any transfers other than those that occurred on the date listed in the plea agreement (January 17, 2015); (b) any transfers that were tied to specific check numbers, or (c) any transfers involving U.S. Bank. Finally, Sevastopoulos asserted that the record established that two specific transfers (totaling $657.43) had been authorized by her mother and should thus have been excluded from the restitution award.

¶5 The State confessed error on the latter point and the court of appeals reversed and remanded for entry of an amended order of restitution. But the court of appeals rejected Sevastopoulos's other contentions. It upheld the inclusion of attorney fees and accountant fees on the ground that they "fall directly within the parameters of the third-party tort rule," an established ground for recovery of attorney fees. *State v. Sevastopoulos*, 2020 UT App 6, ¶ 14, 458 P.3d

1149. And it held that Sevastopoulos's remaining arguments "focus[ed] narrowly on the facts favorable to her, while ignoring important countervailing evidence"—and thus failed to establish a basis for questioning the inclusion of any more of the remaining 217 electronic transfers in question. *Id.* ¶ 21.

¶6 Sevastopoulos filed a petition for writ of certiorari.[1] We granted review on two issues: (1) whether the court of appeals erred in upholding the third-party tort rule as a basis for affirming the district court's inclusion of litigation expenses in the restitution order, and (2) whether the court of appeals erred in affirming the determination that 217 electronic transfers had not been authorized by the parents. In the briefing in our court, the State confessed error as to two additional electronic transfers, acknowledging that the record established that such transfers (in the total amount of $13,271) had been authorized.

¶7 We reverse and remand to the district court to allow it to enter an amended restitution order excluding the amounts of the four transactions that the State concedes were authorized by the parents. But we otherwise affirm. We hold that (1) litigation expenses incurred in collateral litigation are an appropriate element of restitution under the Crime Victims Restitution Act, and (2) Sevastopoulos has failed to establish any ground for questioning any of the other electronic transfers in question.

I

¶8 When a defendant is convicted of a crime resulting in "pecuniary damages," our code[2] requires the court to "order that the defendant make restitution" to the victims. UTAH CODE § 77–38a–302(1) (2015). Only "pecuniary damages" are recoverable. *Id.* § 77–38a–102(11) (limiting restitution to "full, partial, or nominal payment for pecuniary damages to a victim, including prejudgment interest . . . ."). And "[p]ecuniary damages" are defined to extend to "all

---

[1] Sevastopoulos passed away during the pendency of these proceedings. The personal representative of her estate was substituted as a party.

[2] The legislature amended the Crime Victims Restitution Act in 2015. But we cite and apply the version of the statute in effect at the time of Sevastopoulos's crimes. *See State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829 (noting that we apply "the law as it exists at the time of the event regulated by the law in question").

demonstrable economic injury, whether or not yet incurred, which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 77–38a–102(6). This definition "includes the fair market value of property taken, destroyed, broken, or otherwise harmed, and losses including lost earnings and medical expenses, but excludes punitive or exemplary damages and pain and suffering." *Id.*

¶9 Sevastopoulos asks us to hold that the attorney fees incurred by her parents do not qualify as pecuniary damages. She asserts that such fees are a form of "consequential damages" that are "special" and in some sense "punitive or exemplary." And she invites us to hold that the "third-party tort rule" does not extend to restitution cases, or at least to cases involving charges of conversion.

¶10 We see no basis for this position. The central question presented is not whether attorney (or accountant) fees are in some sense "consequential" or "special." It is whether they qualify as the sort of "pecuniary damages" that are included in a restitution award. And the answer to that question is clear under the plain language of the governing statute.

¶11 The fees in question represent "demonstrable economic injury . . . which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id*. § 77–38a–102(6) (2015). This is clear from the "third-party tort rule." Such rule provides that "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures . . . ." RESTATEMENT (SECOND) OF TORTS § 914(2) (AM. L. INST. 1979); *see USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 93 n.128, 372 P.3d 629 (endorsing the third-party tort rule).

¶12 The fees at issue fit squarely within this rule. The parents incurred these fees "in the protection of" their "interests" in litigation with third parties—the credit card companies. This third-party litigation was proximately caused or necessitated by Sevastopoulos's tortious, criminal acts. In fact, it resulted in a mitigation of the injury that otherwise would have impacted the parents, through recovery of amounts wrongfully transferred to the credit card companies. This is not a form of "punitive or exemplary damages." It is "demonstrable" economic harm, which the parents would have been entitled to recover in a civil action under our law.

¶13 That conclusion holds for both the attorney fees and the accountant fees in question. The State presented ample evidence in support of the conclusion that the accountant fees were incurred in proximate connection with the parents' third-party litigation. Perhaps the accountants' investigation bore some resemblance to a criminal law enforcement investigation, as Sevastopoulos suggests. But she cites no authority for the proposition that such resemblance should foreclose the recoverability of these fees as damages under the third-party tort rule. We know of no such authority. And we thus affirm the court of appeals' decision to include the $2,000 amount in its restitution award.

¶14 Our case law does not establish a basis for a "conversion" exception to this general rule. In *Broadwater v. Old Republic Surety*, we declined to apply the third-party exception to a request for attorney fees in a case involving conversion of stock. 854 P.2d 527, 534–35 (Utah 1993). But we did not base our decision on the type of property converted or on a reluctance to apply the exception to conversion cases generally. We simply found that the attorney fees in question were not incurred *in third-party litigation*. *See id.* at 535 (noting that the third-party exception applies only "to the recovery of fees incurred in resolving third-party disputes caused by a defendant's negligence" and does not extend to "fees incurred in recovering damages from that defendant").

¶15 Sevastopoulos's remaining objections are not properly presented for our review. She complains that the State failed to adequately plead or prove the basis for a recovery of attorney fees. But these assertions were not preserved in the district court and not even advanced on appeal until the reply brief. They were accordingly forfeited. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903.

II

¶16 A restitution award is available for pecuniary damages that can be recovered "in a civil action arising out of the facts or events constituting the defendant's criminal activities." UTAH CODE § 77–38a–102(6) (2015). And the covered criminal activities encompass "any criminal conduct admitted by the defendant to the sentencing court or to which the defendant agrees to pay restitution." *Id.* § 77–38a–302(5)(a).

¶17 Sevastopoulos advances a series of grounds for challenging the amount of restitution awarded by the district court. But her challenges are either unpreserved or meritless.

¶18 First, Sevastopoulos failed to preserve the claim that she is legally liable for restitution only for electronic transfers made on the date(s) identified in the plea agreement—"on or about January 17, 2015." She points us to two record pages in support of her contrary conclusion. But neither of the cited objections was specific enough to alert the district court of the argument she now raises. This claim is unpreserved because she did not present the district court with a meaningful opportunity to rule in her favor.

¶19 Second, Sevastopoulos has not advanced persuasive grounds for questioning the district court's calculation of a restitution award that included electronic transfers tied to specific check numbers and extended to transfers made to U.S. Bank. The district court's findings were supported by ample evidence (except as to the four transactions on which the State has confessed error). And as the court of appeals noted, Sevastopoulos cannot establish clear error where she "focus[es] narrowly on the facts favorable to her" while failing to deal with "important countervailing evidence." *State v. Sevastopoulos*, 2020 UT App 6, ¶ 21, 458 P.3d 1149.

### III

¶20 We affirm on the central questions presented for our review. But we remand to the district court to allow it to enter an amended restitution order.

¶21 The State has confessed error as to four transfers totaling $13,928.43. We remand to the district court for entry of an amended restitution order excluding these amounts. But we find no basis for concluding that the State's confession of error creates a cloud of doubt on the remainder of the district court's order, as Sevastopoulos has suggested in the briefs on certiorari.