2024 UT App 98

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOHN THOMAS WINTER,
Appellant.

Opinion
No. 20220474-CA
Filed July 18, 2024

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 191908361

Andrea J. Garland and Isaac E. McDougall,
Attorneys for Appellant

Sean D. Reyes and Connor Nelson,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and AMY J. OLIVER concurred.

MORTENSEN, Judge:

¶1 John Thomas Winter pled no contest to one count of sodomy on a child, reserving his right to appeal whether his case should have been dismissed on statute-of-limitations grounds. Through successive amendments, the Utah Legislature had lengthened the applicable limitations period—each time before the prior limitations period had run. For a number of reasons, Winter claims that the amendments could not apply to his case. The district court rejected Winter's arguments, and we do too. As a result, we affirm the district court's rulings and Winter's conviction.

BACKGROUND

¶2      Sometime between August 30, 1988, and August 30, 1990, Winter sexually abused Sarah,[1] his cousin. At the time, Sarah was five or six years old, and Winter was an adult living with Sarah's family. Winter would enter Sarah's bedroom late at night and "unroll [her] out of the blanket and touch [her] vagina" under her clothing with his fingers. While Sarah could not recall the exact number of times this happened, she testified that it happened "repeatedly." Additional abuse occurred around this same time when Winter babysat Sarah. Winter would touch Sarah's vagina and make her "put his penis in [her] mouth." Winter grabbed Sarah by the neck and told her that "he would kill [her] if [she] told anybody."

¶3      Sarah told her friend about the abuse each time it happened. Then at age twelve, Sarah told her "whole family," but no action was taken. Over the years, she told additional family members about the abuse. She has since seen Winter at family events and when he "showed up" uninvited at her wedding.

¶4      In 2019, Sarah reported the abuse to law enforcement. And in October 2019, the State charged Winter with one count of sodomy on a child, one count of aggravated sexual abuse of a child, and one count of sexual abuse of a child. At a preliminary hearing later that same month, Sarah testified about the abuse and identified Winter as the perpetrator. The district court bound Winter over on all charges for trial.

¶5      In December 2019, Winter filed a motion to dismiss the charges for violation of ex post facto provisions of the United States and Utah Constitutions because the statute of limitations being applied "was different now than when the acts [were] alleged." The State opposed the motion but also amended the charge of aggravated sexual abuse of a child to sexual abuse of a

---

1. A pseudonym.

child in order to remedy any ex post facto issues. Winter withdrew the motion as he believed the amended charges "resolve[d] any issue" related to ex post facto law violations.

¶6      In November 2020, Winter filed a second motion for dismissal, this time under rule 25 of the Utah Rules of Criminal Procedure. *See* Utah R. Crim. P. 25(b)(1) ("The court shall dismiss the information or indictment when . . . [t]here is unreasonable or unconstitutional delay in bringing defendant to trial . . . ."). Winter argued that because the original statute of limitations had run, the charges violated his due process rights under the Utah Constitution. In its opposition to the motion, the State argued that because the original statute of limitations for the charged offenses had not run before the legislature amended and expanded it, the amended statute of limitations applied to Winter's charges. In the State's view, the extended statute of limitations had not expired and therefore there was no violation of Winter's due process rights. The district court agreed with the State and denied Winter's motion. Winter petitioned this court for permission to mount an interlocutory appeal from the district court's order, which we denied.

¶7      As part of a plea agreement, Winter entered a no contest plea to one count of sodomy on a child while reserving the right to appeal "the question of the statute of limitations." *See id.* R. 11(j); *State v. Sery*, 758 P.2d 935, 937–40 (Utah Ct. App. 1988). In exchange, the State dropped the two sexual abuse of a child charges and a separate case pending against Winter. The district court sentenced Winter to "an indeterminate term of not less than five years and which may be life in prison" for the sodomy on a child conviction. Winter appeals.

ISSUES AND STANDARDS OF REVIEW

¶8      Winter raises two issues on appeal. First, Winter argues that, under section 68-3-3 of the Utah Code, the district court erred

by retroactively applying an amended statute of limitations for his charged crimes because the amended limitations period is longer than the limitations period applicable at the time the abuse occurred. "Whether the trial court applied the proper statute of limitations is a matter of law that we review for correctness." *State v. Green*, 2005 UT 9, ¶ 15, 108 P.3d 710. Additionally, when the issue requires us to engage in statutory interpretation, we review the district court's decision for correctness. *State v. Toombs*, 2016 UT App 188, ¶ 18, 380 P.3d 390. However, "[w]e review the trial court's findings concerning events relevant to the application of the statute of limitations as questions of fact, which we will not disturb unless clearly erroneous." *Green*, 2005 UT 9, ¶ 15. The State argues that Winter did not preserve this issue for appeal. Winter asserts that the issue was preserved but also argues in the alternative that the district court's actions amounted to plain error—an exception to our preservation requirement. "Plain error is a question of law reviewed for correctness." *State v. Popp*, 2019 UT App 173, ¶ 19, 453 P.3d 657 (cleaned up).

¶9    Second, Winter argues that the district court violated his due process rights by applying the amended statute of limitations. "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *State v. Charles*, 2011 UT App 291, ¶ 17, 263 P.3d 469 (cleaned up).


ANALYSIS

¶10    To properly address each of Winter's claims, we begin by reciting the relevant legislative history of the statute of limitations for sodomy on a child. As stated above, Winter's abuse of Sarah took place sometime between August 30, 1988, and August 30, 1990. For purposes of this analysis, we will assume the abuse happened in 1988—the earliest possible date of Winter's conduct. In 1988, the statute of limitations for sodomy on a child was "one year after the report of the offense to law enforcement officials, so long as no more than eight years ha[d] elapsed since the alleged

commission of the offense." Utah Code § 76-1-303(c) (1988). In 1991, the legislature extended the statute of limitations to "within four years after the report of the offense to a law enforcement agency." Act of Feb. 25, 1991, ch. 175, § 2, 1991 Utah Laws 681, 681 (codified as Utah Code § 76-1-303(3) (1991)); *see also* Act of Feb. 20, 1995, ch. 232, § 4, 1995 Utah Laws 791, 791 (codified as Utah Code § 76-1-303.5 (1996)) (changing the applicable subsection but maintaining the same statute of limitations for sodomy on a child). In 2008, the legislature amended the statute once again, this time eliminating any statute of limitations defense for sodomy on a child. Act of Feb. 11, 2008, ch. 129, § 1, 2008 Utah Laws 1143, 1143 (codified as Utah Code § 76-1-301(13) (2008)) ("Notwithstanding any other provisions of this code, prosecution for the following offenses may be commenced at any time: . . . sodomy on a child . . . .").

## I. Statutory Claim

¶11    Winter first argues that the district court "prejudicially erred by failing to follow section 68-3-3." That section states that a "provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." Utah Code § 68-3-3. Winter contends that because the amendments to the statute of limitations did not include express declarations of retroactivity, "they applied only prospectively to crimes occurring after their effective dates" and thereby did not apply to Winter.

¶12    The State argues that Winter has not preserved this issue for our review on appeal, and we agree. "When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443.

> An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it. To provide

the court with this opportunity, the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority.

*Id.* (cleaned up). "We view issues narrowly," and an issue is unpreserved "when the appellant raises a legal theory entirely distinct from the legal theory" raised before the district court. *Ahhmigo, LLC v. Synergy Co. of Utah, LLC*, 2022 UT 4, ¶ 18, 506 P.3d 536 (cleaned up).

¶13    Winter's arguments to the district court made no mention of section 68-3-3; instead, in his motion to dismiss the charges, he framed his arguments against retroactive application of the statute of limitations solely as a violation of his due process rights. Winter argues that his statutory theory against retroactivity was preserved for appellate review by these due process arguments. To support this assertion, Winter points us to our supreme court's decision in *Patterson v. Patterson*, 2011 UT 68, 266 P.3d 828, which states that "we routinely consider new authority relevant to issues that have properly been preserved" and are "unwilling to disregard controlling authority that bears upon the ultimate resolution of a case solely because the parties did not raise it below." *Id.* ¶ 18. *Patterson* "confirm[ed] that we view *issues* narrowly, but also made it clear that new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation." *Johnson*, 2017 UT 76, ¶ 14 n.2. New arguments include things such as "citing new authority or cases supporting an issue that was properly preserved." *Id.* *Patterson* requires "courts to look at the underlying policies to determine whether new arguments are actually entirely new issues" that may or may not be preserved. *Id.* Our supreme court has pointed out that "every case cited in *Patterson* to support the assertion that this court has refused to consider new arguments on appeal, dealt with entirely new legal theories" and therefore involved matters that were unpreserved. *Id.* (cleaned up).

¶14   In *Ahhmigo, LLC v. Synergy Co. of Utah, LLC*, 2022 UT 4, 506 P.3d 536, an appeal followed arbitration proceedings concerning one party's failure to deliver product that the other party had already paid for. *Id.* ¶¶ 1–2. On appeal, the appellant argued that "the arbitrator manifestly disregarded the law when he failed to credit an alleged stipulation between the parties" that a provision of their contract "was not a liquidated damages provision." *Id.* ¶ 14. The appellant did not argue an exception to preservation but instead argued that "it preserved the issue by submitting to the district court the issue of whether [the appellee] was entitled to keep both [of the appellant's] payments and the resale proceeds." *Id.* ¶ 17 (cleaned up). According to the appellant, "that issue include[d] its argument about liquidated damages because Utah law limits damages by excluding proceeds from resale, unless a liquidated damages provision provides otherwise." *Id.* (cleaned up). Our supreme court was unpersuaded and determined that the appellant's "effort to evade our preservation rule by broadly defining the issue it raised in the district court [was] unavailing." *Id.* ¶ 18 (cleaned up). The court concluded that the appellant's argument on appeal was an entirely distinct legal theory from that which it raised below because before the district court the appellant focused on "whether the arbitrator manifestly disregarded the law when he failed to apply the damages framework" laid out in our caselaw, while on appeal the appellant asked "whether the arbitrator manifestly disregarded the law when he chose to ignore the parties' stipulation that the contract did not contain a liquidated damages provision." *Id.* ¶ 19 (cleaned up). The court reasoned that "a party may not preserve an issue by merely mentioning it" and that the appellant "at best" "briefly mentioned the alleged agreement between the parties to the district court," which, "as our preservation rule makes clear, is not enough." *Id.* ¶ 22 (cleaned up).

¶15   In *True v. Utah Department of Transportation*, 2018 UT App 86, 427 P.3d 338, without arguing an exception to preservation, the appellants contended that their proximate cause argument

connected to a waiver of governmental immunity under the application of new caselaw was preserved on appeal because "the basic issue of whether [the appellee had] immunity" had been raised. *Id.* ¶ 21 (cleaned up). Our court disagreed because "even though the overarching issue of causation was before the district court, the [appellants] did not preserve the distinct legal theory . . . advanced on appeal." *Id.* ¶ 22.

¶16 Like in *Ahhmigo* and *True*, Winter argues that his statutory argument is preserved by the arguments he made below, but we are unpersuaded by Winter's "effort to evade our preservation rule by broadly defining the issue" he raised before the district court. *Ahhmigo*, 2022 UT 4, ¶ 18 (cleaned up). Winter argued before the district court that the statute of limitations had run on the claims against him and that alone was sufficient grounds to dismiss the case. He argued further that the Utah Constitution barred the charges because he had a vested right to retain the statute of limitations defense due to the limitations period having run. Importantly, he made no mention of section 68-3-3 in his arguments to the district court, and he did not ask the district court to weigh in on the legal theory that this statute—as opposed to other legal principles—compelled a result in his favor. In contrast, on appeal, Winter's legal theory is that, regardless of whether the statute of limitations had run, section 68-3-3 prevents the retroactive application of a statute of limitations without an express provision in the later-enacted statute. Winter "never presented this theory or the underlying line of reasoning" to the trial court." *Federated Cap. Corp. v. Deutsch*, 2018 UT App 118, ¶ 8, 428 P.3d 51. "A party may not preserve an issue by merely mentioning it," *Ahhmigo*, 2022 UT 4, ¶ 22 (cleaned up), and here Winter did not even do that much. Thus, because Winter did not preserve for appellate review the specific legal theory he now raises on appeal, we turn to his alternative argument and examine the theory under the plain error standard.

¶17    For us to consider an unpreserved issue on appeal, an appellant must establish that an exception to preservation applies, and plain error is one such exception. *Johnson*, 2017 UT 76, ¶ 19. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Id.* ¶ 20 (cleaned up). Failure to meet any of these requirements is fatal to a claim of plain error. *Id.*

¶18    Our supreme court has rejected Winter's statutory argument in the context of a rape of a child charge, determining that the amended statute of limitations applied retroactively, even in the face of section 68-3-3. *State v. Green*, 2005 UT 9, ¶¶ 20–22, 108 P.3d 710. No district court judge would be expected to ignore such on-point precedent. And, if following this precedent were indeed to be an error, as Winter claims it is, that error—requiring the judge to disregard an opinion from our supreme court directly discussing the issue—would be far from obvious to the district court. Indeed, the reverse would be true—it would be obvious to the district court that it would be error to contravene supreme court precedent. Thus, given this precedent, the district court did not commit plain error by not sua sponte applying section 68-3-3 in the manner now urged by Winter.

¶19    Alternatively, in Utah, well-established precedent holds that "because statutes of limitations are procedural in nature, a legislative amendment enlarging a limitation[s] period may be applied retroactively to crimes committed before the amendment where the limitations defense has not accrued to the defendant before the amendment becomes effective." *State v. Lusk*, 2001 UT 102, ¶ 28, 37 P.3d 1103 (cleaned up); *accord Garcia v. State*, 2018 UT App 129, ¶ 10, 427 P.3d 1185.

¶20    In *State v. Clark*, 2011 UT 23, 251 P.3d 829, our supreme court discussed retroactivity of statutes and clarified that "we apply the law as it exists at the time of the event regulated by the

law in question." *Id.* ¶ 13. The court continued that the difference in the treatment of amended substantive statutes—beholden to section 68-3-3—versus those that are procedural—such as the statute of limitations—is "the nature of the underlying occurrence at issue." *Id.* ¶ 14.

> On matters of *substance* the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim). When it comes to the parties' *procedural* rights and responsibilities, however, the relevant underlying conduct is different: the relevant occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal).

*Id.* Thus, the law governing procedural occurrences is "the law in effect at the time of the procedural act, not the law in place at the time of the occurrence giving rise to the parties' substantive claims." *Id.*

¶21    Under this precedent—where the statute of limitations has been held to be a procedural matter—the district court did not plainly err by denying Winter's motion to dismiss because at the time of the procedural act—the filing of the charges—the statute of limitations had not yet run. Winter, at the earliest, abused Sarah in 1988. At that time, the statute of limitations was one year after the report of the offense to law enforcement, so long as no more than eight years had passed since the time of the alleged abuse. The legislature amended the statute three years later, in 1991, at which point Sarah had not reported the abuse to law enforcement and at least five years remained before the statute of limitations would have run under the eight-year requirement. Thus, because the "limitations defense ha[d] not accrued" before the 1991 amendment became effective, the amendment applied to Winter's

crimes. *See Lusk*, 2001 UT 102, ¶ 28. Under the 1991 statute, the statute of limitations was expanded to four years after a report of the offense to law enforcement. When the legislature amended the statute again in 2008, Sarah had not made a report of the abuse to law enforcement, so the statute of limitations had again not yet run, thus the 2008 amendment applied. Under the 2008 amendment, a statute of limitations defense for sodomy on a child was eliminated entirely. Thus, because at no point since 1988 did the statute of limitations run before it was amended, when Sarah reported the abuse to law enforcement in 2019, the 2008 elimination of the statute of limitations was in effect and the charges were not time-barred.

¶22    Thus, under either analysis, existing caselaw runs counter to Winter's position, and therefore the district court did not plainly err by not sua sponte applying section 68-3-3 in the manner now urged by Winter, and the court did not plainly err in denying Winter's motion to dismiss.

## II. Due Process Claim

¶23    Winter next argues that the district court violated his due process rights "by failing to apply the statute of limitations that applied at the time of his alleged crimes and which expired before the State filed the instant charges."[2] Under the Utah Constitution, "[n]o person shall be deprived of life, liberty or property, without due process of law." Utah Const. art. I, § 7. The Due Process

---

2. As part of this argument, Winter contends that his due process rights were violated because the amendments to the statute of limitations "violate constitutional ex post facto prohibitions." *See State v. Marshall*, 2003 UT App 381, ¶ 10, 81 P.3d 775 ("Article I, § 10, of the [United States] Constitution prohibits the States from passing any ex post facto law." (cleaned up)). However, Winter concedes that he "waived the *ex post facto* claim," and we therefore will not address this issue.

Clause is a "constitutional standard measured by reference to traditional notions of fair play and substantial justice." *Mitchell v. Roberts*, 2020 UT 34, ¶ 31, 469 P.3d 901 (cleaned up). "The bare essentials of due process have been characterized as notice of the proposed action of deprivation and an opportunity to be heard in a meaningful manner." *In re Baby Girl T.*, 2012 UT 78, ¶ 16, 298 P.3d 1251 (cleaned up). However, due process "is flexible and requires such procedural protections as the particular situation demands." *Id.* ¶ 31 (cleaned up).

¶24 The procedural protections required here have been clearly laid out by both the legislature and our supreme court. The Utah Rules of Criminal Procedure require dismissal when the "prosecution is barred by the statute of limitations." Utah R. Crim. P. 25(b)(5). When "an issue concerning the statute of limitations is raised" in a sodomy on a child case, "the judge shall determine by a preponderance of the evidence whether the prosecution is barred by the limitations in [the statute]." Utah Code § 76-1-306.[3] Statutory amendments "enlarging a statute of limitations"—such

---

3. Winter argues that this statute required the district court to make factual findings as to whether the "preponderance of the evidence" supported the conclusion that the statute of limitations had run. *See* Utah Code § 76-1-306. Winter contends that the district court made no such findings and did not determine which statute of limitations applied. However, this statute does not require the district court to enter factual findings on the record; instead, it sets forth the standard of proof district courts are to apply. Absent any indication otherwise, "we can reasonably assume that the court actually made [any required] findings" to reach its decision. *State v. Weeks*, 2002 UT 98, ¶ 24, 61 P.3d 1000 (cleaned up) (rejecting a defendant's argument to read a sentencing statute as requiring courts to make factual findings on the record). The record here gives us no reason to think that the district court applied a lesser standard or failed to determine the appropriate statute of limitations to apply.

as the 1991 and 2008 amendments here—"will extend the limitations period applicable to a crime already committed only if the amendment becomes effective before the previously applicable statute of limitations has run, thereby barring prosecution of the crime." *State v. Toombs*, 2016 UT App 188, ¶ 16, 380 P.3d 390 (cleaned up); *see also State v. Green*, 2005 UT 9, ¶ 20, 108 P.3d 710; *State v. Lusk*, 2001 UT 102, ¶ 26, 37 P.3d 1103.

¶25   Because the limitations period never ran on Winter's charges ahead of each amendment, the amendments extending and later eliminating the statute of limitations retroactively applied to the charges against him. Thus, Winter never had a right to rely on a statute of limitations defense because the statute of limitations never ran on his charges and his due process rights were not violated. Therefore, we reject Winter's argument.[4]

CONCLUSION

¶26   Winter's claims regarding the applicability of Utah Code section 68-3-3 are unpreserved. The district court did not plainly err when it did not sua sponte apply that statute in the manner Winter now urges, and it did not plainly err by applying existing caselaw regarding the retroactivity of amendments to the statute of limitations. Furthermore, applying the then-applicable statute of limitations did not violate Winter's due process rights. Accordingly, we affirm.

————————

4. To the extent that Winter asks us to depart from our supreme court's precedent, we reject his request as we do not have the authority to do so. *In re G.D.*, 2021 UT 19, ¶ 67, 491 P.3d 867 (explaining that the "court of appeals is bound" by our supreme court's precedent and any effort before this court to overturn those decisions is "futile"). Winter does not argue otherwise. We recognize that Winter makes these arguments eyeing an eventual petition to our supreme court.