2026 UT App 33

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHRISTOPHER EARL DEVORE,
Appellant.

Opinion
No. 20240393-CA
Filed March 5, 2026

Second District Court, Ogden Department
The Honorable Noel S. Hyde
No. 191900909

Emily Adams and Jessica Hyde Holzer,
Attorneys for Appellant

Derek E. Brown and Michael Palumbo,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1      Christopher Earl Devore unlawfully entered a home and punched a man he found inside engaging in sexual intercourse with Devore's on-again, off-again girlfriend. Devore pled guilty to burglary and was ordered to pay $360.60 in restitution for the cost of a medical consultation and exam the victim received shortly after the incident. More than three years after Devore's sentencing but while Devore was still on probation, the Utah Office of Victims of Crime (UOVC) asked the district court to order Devore to pay nearly $30,000 in additional restitution for the cost of a nasal reconstruction surgery that the victim eventually underwent, which the court did.

¶2 Devore appeals the order of additional restitution, asserting that the district court plainly erred by applying the wrong version of the Crime Victims Restitution Act (the Restitution Act). He contends that if the court had applied the correct version, it would have found that UOVC's request for additional restitution was untimely. Devore also asserts that his defense counsel (Counsel) rendered ineffective assistance by not bringing this issue to the court's attention. Finally, Devore asserts that UOVC presented insufficient evidence to establish that his criminal conduct was the proximate cause of the victim's injuries that formed the basis of the additional restitution order. We are not persuaded by Devore's arguments, and we therefore affirm the order of additional restitution.

BACKGROUND

*The Burglary, Charges, Guilty Plea, and Initial Restitution*

¶3 During the early morning hours of August 31, 2018, Devore entered a home belonging to Roger[1] and found Roger engaging in sexual intercourse with Devore's "paramour." Devore punched Roger in the face.

¶4 Devore was charged in April 2019 with burglary and assault. In January 2020, the burglary count was amended to first-degree-felony aggravated burglary. In February 2020, Devore pled guilty to second-degree-felony burglary of a dwelling, and the assault charge was dismissed. As part of his plea, Devore acknowledged that he could be required to pay restitution. In July 2020, Devore was sentenced to sixty days in jail and forty-eight months of probation.

¶5 In September 2021, UOVC requested restitution of $360.60 for a medical consultation and nasal endoscopy that Roger

---

1. A pseudonym.

received in February 2020 to address injuries to his nose and for which UOVC had paid. The court granted this request, and Devore paid that restitution.

*The Request for Additional Restitution*

¶6     In November 2023—more than three years after Devore was sentenced but while he was still on probation—UOVC made a request for additional restitution, this time for $29,976.93 "in medical bills on behalf of [Roger], which resulted from the assault in this case." UOVC explained that Roger had undergone nasal surgery in October 2022 and that UOVC had covered the cost of that surgery.

¶7     Devore opposed UOVC's motion for additional restitution, arguing that the State had provided insufficient evidence to establish that his punch was the proximate cause of the injuries addressed by the surgery. In March 2024, the court held an evidentiary hearing on UOVC's request for additional restitution. The parties agreed to proffer evidence at the hearing instead of offering live testimony.

¶8     UOVC made its proffer first. After summarizing the invoices for the medical services for which UOVC had paid, UOVC presented a declaration from its restitution specialist (Specialist). Specialist declared that when UOVC received Roger's first application for UOVC funds, she reviewed the police report of Devore's burglary and noted that officers at the scene had observed that Roger had "noticeable swelling around his mouth . . . [and] nose, and below his eyes." Specialist stated that UOVC verified Roger did not have insurance, that UOVC reviewed the billing codes "to ensure that all of the expenses billed by the medical providers were related to [Devore's] criminal conduct in this case," and that UOVC then approved Roger's first application for assistance. Specialist explained that this first approval was for $360.60 to cover Roger's initial medical consultation and nasal endoscopy.

¶9      Specialist's declaration continued, stating that in August 2021, Roger requested "approval for a reconstructive surgery that was scheduled for September 14, 2021." Specialist explained that "UOVC generally requires a preauthorization" from a medical provider before it pays for surgery. Thus, Specialist said, upon receiving Roger's request for assistance with surgery, UOVC spoke with Roger's medical provider. According to Specialist, the provider stated that Roger "was seen for an evaluation of previous nasal trauma and ongoing internal and external obstruction" and, "based on photographs and information provided by [Roger], the nasal obstruction and deformity appeared to be a result of the facial trauma he experienced several years prior to his visit."

¶10     Specialist's declaration further explained that UOVC spoke with Roger about his delay in requesting assistance for surgery. According to Specialist, Roger said "that due to the COVID-19 pandemic," the provider had "not previously [been] prioritizing non-emergent surgeries." Specialist also said that Roger indicated that "he had no medical insurance" at the time of the assault, could not "afford the cost of the surgery," and, thus, "expected to never get his nose fixed," but that "when he discovered [UOVC] could help, he sought medical attention."

¶11     Specialist noted that UOVC "received the final preauthorization" for Roger's surgery in September 2022 and that Roger "was able to get the surgery he needed in October of 2022." Specialist stated that she reviewed the coded medical procedures outlined in the invoices related to the surgery, including "an excision of a 'tumor' greater than 2 cm or more" from Roger's nose. UOVC indicated that Specialist then "reached out to the provider" to ask about the charge for the excision of a tumor and learned "that this was for a cartilage graft that was part of the nasal repair." Finally, Specialist declared that—based on the portions of the invoiced charges that the medical providers were

not willing to write off, for which UOVC had paid—UOVC was "seeking $29,976.93 in additional restitution."

¶12    UOVC also proffered two declarations from Roger. In the first, Roger declared that during "the early morning hours of August 31, 2018, [he] was assaulted in [his] home by [Devore]," who "entered . . . without permission and hit [him] in the face, breaking [his] nose." Roger said that following this assault, his "right nasal passage was visibly collapsed" such that he "could no longer breath[e] out of [his] right nostril" and that "[t]his injury did not heal on its own." Roger's first declaration further explained that Roger had been "attacked in 2017 by a group of people in Salt Lake City" who had "punched [him] in the face" but that he "did not have any lasting damage to [his] face or nose and did not experience any breathing problems" after that incident.

¶13    In his second declaration, Roger addressed Devore's allegation (which was based on the foregoing representations in Roger's first declaration, which Devore had apparently received previously) that Roger's ailments were "due to a pre-existing injury that was inflicted by parties other than" Devore. In addressing that allegation, Roger again acknowledged that he had suffered facial injuries "when [he] was attacked by a group of people in Salt Lake City" in 2017, but he again maintained that his "nose was not broken during this attack" and that he "had no lasting injuries" from this attack. Roger further acknowledged, "My brother did once find me bleeding on the floor of my bathroom after I fell and cut my face open. This also happened in 2017, but it was not related to the attack in Salt Lake City." Roger then declared as to his bathroom fall, "The cut on my face was bleeding, not my nose. I received stitches for that injury the next day . . . . My nose was not broken as a result of the fall, and I had no lasting injuries then either."

¶14 Following UOVC's proffer, Counsel made a proffer in opposition to the request for additional restitution. He stated that Devore hit Roger on the left side of the face, and he asserted that "there's no connection" "between the attack to the left side of the face and the collapse of the right nasal passage." Counsel represented that Devore would testify that when "he confronted [Roger] immediately prior to the assault, he heard [Roger] wheezing when he breathed through his nose," an indication, Counsel argued, that Roger's nose had been "harm[ed]" "before [Devore] showed up." Counsel then contended that the attack in Salt Lake City and the bathroom fall were the "more likely" causes of Roger's nasal injuries.

¶15 Ultimately, the court found that UOVC's claim for additional restitution had been "properly documented and supported by a preponderance of the evidence." The court noted that UOVC had not merely accepted the invoices from the medical providers at face value but, instead, had checked the coding on the invoices and spoken with the providers. The court also highlighted that UOVC's proffer of the providers' observations supported the assertion that "the injuries appear[ed] to be consistent with the nature of the assault [that] was the subject of the underlying offense." Based on the foregoing, the court entered an order requiring Devore to pay the requested additional restitution of $29,976.93. Devore now appeals that order.

### ISSUES AND STANDARDS OF REVIEW

¶16 Devore asserts for the first time on appeal that UOVC's request for additional restitution was governed by the 2023 version of the Restitution Act (the 2023 Act) and that under the 2023 Act, "the district court did not have jurisdiction to enter" the additional restitution order because the request for additional restitution was untimely. Because Devore did not preserve this issue by raising it below, he asserts that (1) the district court plainly erred by not recognizing that the 2023 Act applied and

(2) Counsel rendered ineffective assistance for not bringing this issue to the court's attention. *See generally State v. Flora*, 2020 UT 2, ¶ 9, 459 P.3d 975 ("This court has recognized three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances. A party seeking review of an unpreserved issue must establish the applicability of one of these exceptions . . . ." (cleaned up)). Because Devore's plain error claim involves no lower court ruling, we decide it in the first instance as a matter of law. *See State v. Dew*, 2025 UT App 22, ¶ 28, 566 P.3d 53, *cert. denied*, 568 P.3d 264 (Utah 2025). Likewise, because an ineffective assistance of counsel claim raised for the first time on appeal involves no lower court ruling, we decide in the first instance as a matter of law whether Devore was deprived of the effective assistance of counsel. *See id.*

¶17    Devore also asserts that there was insufficient evidence to support the district court's finding that his punch was the proximate cause of Roger's nasal injuries. "When a defendant argues that the evidence was insufficient to support a restitution order, the defendant must demonstrate that the clear weight of the evidence contradicts the court's ruling." *State v. Murray*, 2023 UT App 52, ¶ 21, 530 P.3d 982 (cleaned up).

ANALYSIS

I. The Restitution Act

¶18    From May 9, 2017, through May 30, 2021—a period encompassing the dates on which Devore's criminal act was committed, the charges against Devore were filed and amended, his guilty plea was entered, and his sentence was imposed—the Restitution Act stated that all restitution requests were to be submitted "at the time of sentencing if feasible, otherwise within one year after sentencing." Utah Code § 77-38a-302(5)(d)(i) (2017); *accord id.* § 77-38a-302(5)(d)(i) (2020). However, this version of the Restitution Act (the 2017 Act) also provided that "[i]f a defendant

[was] placed on probation," then "the time period for determination of [restitution could] be extended by the court upon a finding of good cause" as long as the extension did "not exceed the period of the probation term served by the defendant." *Id.* § 77-38a-302(5)(d)(ii) (2017); *accord id.* § 77-38a-302(5)(d)(ii) (2020). Here, both the request for additional restitution and the court's decision to grant that request were made while Devore was on probation.

¶19 In contrast, from May 3, 2023, through April 30, 2024—a period encompassing the date on which UOVC requested additional restitution and the date on which the court entered its order of additional restitution—the 2023 Act required the district court to "enter an order for restitution in a defendant's case no later than the earlier of . . . the termination of the defendant's sentence . . . or . . . [,] if the defendant [was] convicted of a felony [but not imprisoned for a first degree felony], within three years after the day on which the court sentence[d] the defendant for the felony conviction." *Id.* § 77-38b-205(5)(a) (2023). Under the 2023 Act, a request for restitution "made within the time period described in Subsection (5)(a)" tolled the time within which the court was required to enter the restitution order. *Id.* § 77-38b-205(5)(b) (2023). Here, UOVC's request for additional restitution was submitted more than three years after the day on which Devore was sentenced.

¶20 Based on the foregoing, if the 2017 Act properly applied to UOVC's request for additional restitution, UOVC's request was timely and the court had authority to issue its additional restitution order if the court found good cause for extending the default one-year deadline for submitting restitution requests. On the other hand, if the 2023 Act properly applied, UOVC's request for additional restitution was untimely and the court lacked authority to issue an additional restitution order.

¶21    Devore contends that the 2023 Act properly applied. And because he failed to preserve this argument below, he claims that the district court plainly erred by not applying the 2023 Act and that Counsel rendered ineffective assistance by not arguing for application of the 2023 Act. As explained more fully below, we conclude that Devore has demonstrated neither plain error nor ineffective assistance.

A.    Plain Error

¶22    Devore claims that the district court plainly erred by not applying the 2023 Act in this case. "To prevail on plain error review, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Cesspooch*, 2024 UT App 15, ¶ 7, 544 P.3d 1046 (cleaned up), *cert. denied*, 550 P.3d 994 (Utah 2024). Devore's plain error claim fails under at least the second prong of the plain error test because it would not have been obvious to the district court that the 2023 Act properly applied to UOVC's request for additional restitution.

¶23    "An error is obvious if the law on the area was sufficiently clear or plainly settled." *Freight Tec Mgmt. Group Inc. v. Chemex Inc.*, 2021 UT App 92, ¶ 41, 499 P.3d 894 (cleaned up). Conversely, "an error is not obvious if there is no settled appellate law to guide the trial court." *State v. Roman*, 2015 UT App 183, ¶ 9, 356 P.3d 185 (cleaned up). Additionally, a court does not commit obvious error if the court follows "on-point precedent." *See State v. Winter*, 2024 UT App 98, ¶ 18, 554 P.3d 355 ("[I]f following [on-point] precedent were indeed to be an error, as [the appellant claimed] it is, that error—requiring the judge to disregard an opinion from our supreme court directly discussing the issue—would be far from obvious to the district court."), *cert. denied*, 558 P.3d 88 (Utah 2024).

¶24   As a general matter, it is well settled that "we apply the law as it exists at the time of the event regulated by the law in question." *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829. Thus, the key question here is which event is regulated by the Restitution Act. On this question, when the district court granted UOVC's request for additional restitution in March 2024, the following appellate pronouncements were part of Utah caselaw:

- In *State v. Sevastopoulos*, 2021 UT 70, 502 P.3d 290, our supreme court addressed whether "litigation expenses incurred in collateral litigation are an appropriate element of restitution under the [Restitution Act]." *Id.* ¶ 7. In analyzing that question, the court stated that it was applying "the version of the [Restitution Act] in effect at the time of [the defendant's] crimes." *Id.* ¶ 8 n.2.

- In *State v. Speed*, 2017 UT App 76, 397 P.3d 824, where we analyzed whether the restitution order at issue was "entered within the jurisdictional time frame established by the [Restitution Act]," *id.* ¶ 16, we "refer[red] to the version of [the Restitution Act] that was in effect at the time [the defendant] was charged," *id.* ¶ 22 n.5.

- In *State v. Jamieson*, 2021 UT App 3, 480 P.3d 363, where a company was the victim of the defendant's "computer crimes," we addressed whether "at least some amount for time spent by [the company's] employees while participating in the criminal case (e.g., attending hearings)" could properly be "included in [the district court's] restitution figure" as "pecuniary damages." *Id.* ¶¶ 1–2, 16. There we stated that we were applying the version of the Restitution Act in effect at the time the defendant pled guilty. *See id.* ¶ 16 & n.6.

- In *State v. Murray*, 2023 UT App 52, 530 P.3d 982, we addressed whether the lost wages that formed a basis of the district court's restitution order were proximately caused

by the crime of which the defendant was convicted. *See id.* ¶ 25. We began our analysis by noting that "as a general rule, we apply the law in effect at the time of the occurrence regulated by that law." *Id.* ¶ 26 (cleaned up). We then applied "the version of the [Restitution Act] in effect at the time of [the defendant's] sentencing." *Id.* (cleaned up).

- In *State v. Garcia*, 2023 UT App 143, 540 P.3d 1158, we again analyzed whether the defendant's criminal acts were the proximate cause of the damages that formed the basis of the district court's restitution order. *See id.* ¶ 9. We reiterated that we apply the law as it exists at the time of the event regulated by the law in question, and we applied the version of the Restitution Act "in effect at the time of [the defendant's] entry of plea and sentencing." *Id.* ¶ 10 n.3.

¶25 In sum, when the district court issued its order of additional restitution, the law was neither clear nor settled as to which event—the defendant's criminal act, the filing of charges, the entry of the defendant's guilty plea, or the defendant's sentencing—was regulated by the Restitution Act. What was clear, however, was that the 2017 Act was in effect when Devore committed the crime in this case, was charged, pled guilty, and was sentenced. Moreover, no controlling law at the time identified the submission or granting of a restitution request as the event regulated by the Restitution Act. Given this state of the law, it would not have been obvious to the district court that the 2023 Act—the version in effect when the request for additional restitution was submitted and granted—applied. *See Roman*, 2015 UT App 183, ¶ 9 ("Without clear guidance in the law, any error would not have been obvious to the district court."). Thus, the district court did not commit plain error by applying the 2017 Act.

¶26 Devore resists this conclusion by contending that while the question of "*whether* the State may seek restitution" is a substantive question that should be answered by applying the

version of the Restitution Act in effect at the time of the defendant's crime, the question of "*when* a party may seek restitution" is a procedural question that should be answered by applying the version of the Restitution Act in effect when the restitution order is signed. *See generally Winter*, 2024 UT App 98, ¶ 20 ("The law governing procedural occurrences is the law in effect at the time of the procedural act, not the law in place at the time of the occurrence giving rise to the parties' substantive claims." (cleaned up)). In support of this argument, Devore points to *Simper v. Board of Pardons & Parole*, 2024 UT App 122, 557 P.3d 240, where we addressed whether the restitution orders in that case were signed "within the time period prescribed by statute." *Id.* ¶ 12. In so doing, we applied the version of the applicable statute that was in effect when the restitution orders were signed. *See id.* ¶ 9 n.1. Devore also points to *Sevastopoulos*, which he characterizes as a case where our supreme court held that "the version of the [Restitution Act] at the time of the offense" governs only "substantive questions about whether restitution may be awarded."

¶27 Devore's general argument—that the question of *when* a party may seek restitution is a procedural question that should be answered by applying the version of the Restitution Act in effect when the restitution order is signed—has some force. *Cf. State v. Lusk*, 2001 UT 102, ¶ 28, 37 P.3d 1103 ("Because statutes of limitations are procedural in nature, a legislative amendment enlarging a limitation period may be applied retroactively to crimes committed before the amendment where the limitations defense has not accrued to the defendant before the amendment becomes effective."). However, although *Speed* did not require us to decide between competing versions of the Restitution Act, Devore's argument it is at least facially at odds with our statement in *Speed*—a case dealing with *when* a restitution order must be entered—that we would "refer to the version of [the Restitution Act] that was in effect at the time [the defendant] was charged." 2017 UT App 76, ¶ 22 n.5. Moreover, there is at least equal force

in the State's argument that Roger's "right to receive restitution under [the Restitution Act] vested—at the latest—when Devore was sentenced" in July 2020, *see* Utah Code § 77-38a-302(1) (2020) ("When a defendant enters into a plea disposition or is convicted of criminal activity that has resulted in pecuniary damages, in addition to any other sentence . . . it may impose, the court shall order that the defendant make restitution . . . ."), and, thus, that any post-sentencing amendment shortening the deadline for requesting restitution should not be applied retroactively, *cf. Lusk*, 2001 UT 102, ¶ 30 ("[A]lthough statutes of limitation may be procedural in nature, a statutory amendment extending a statute of limitations will not be applied retroactively when it eliminates a vested right."). Because no Utah case has fully grappled with this specific issue and determined which of these competing positions controls, it would not have been obvious to the district court that it was required to follow Devore's preferred (but not then articulated) position.

¶28 Devore's reliance on *Simper* also does not help his plain error claim because that opinion was issued on August 29, 2024—several months *after* the district court issued its order of additional restitution—and because it interpreted the Board of Pardons and Parole's governing statute (which, at the time, allowed the board to issue an order for restitution, *see* Utah Code § 77-27-6 (2020)), not the Restitution Act. *See* 2024 UT App 122, ¶ 13. Finally, contrary to Devore's characterization, our supreme court's opinion in *Sevastopoulos* did not hold that the version of the Restitution Act at the time of the offense governs only substantive questions about whether restitution may be awarded. *See* 2021 UT 70, ¶ 8 n.2. Rather, it merely stated that the supreme court was applying the version of the Restitution Act "in effect at the time of [the defendant's] crimes." *Id.*

¶29 For the foregoing reasons, Devore's arguments against our conclusion that the district court did not commit plain error are unavailing, and his plain error claim therefore fails.

B.      Ineffective Assistance of Counsel

¶30   Devore also asserts that Counsel rendered ineffective assistance by not arguing that the 2023 Act applied and precluded the court from awarding additional restitution. We disagree.

¶31   "To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was objectively deficient, and (2) that a reasonable probability exists that but for the deficient conduct the defendant would have obtained a more favorable outcome at trial." *State v. Ellis*, 2014 UT App 185, ¶ 14, 336 P.3d 26 (cleaned up). A defendant claiming ineffective assistance must prove both of these components to prevail. *See id.* "As a result, it is not necessary for us to address both components of the inquiry if we determine that a defendant has made an insufficient showing on one." *Id.* (cleaned up). Here, we address the deficient performance component of Devore's claim.

¶32   "To constitute deficient performance, counsel's representation must fall below an objective standard of reasonableness." *State v. Baugh*, 2024 UT 33, ¶ 19, 556 P.3d 35 (cleaned up). "We judge the reasonableness of counsel's challenged conduct, viewed as of the time of counsel's conduct." *State v. McDaniel*, 2025 UT App 120, ¶ 72, 576 P.3d 1121 (cleaned up), *cert. denied*, 581 P.3d 556 (Utah 2025).

¶33   As detailed above, when UOVC made its request for additional restitution and the district court ruled on that request, all of the decisions touching on the subject indicated that when analyzing issues under the Restitution Act, Utah's appellate courts apply the version of the Restitution Act in effect at the time of sentencing or before. *See supra* ¶¶ 24–25. For this reason, Counsel could have reasonably concluded that it would have been futile to ask the district court to apply the 2023 Act. Thus, Counsel's failure to make that request did not constitute deficient performance. *Cf. State v. Whytock*, 2020 UT App 107, ¶ 40, 469 P.3d 1150 ("Because [the defendant's] trial attorneys could have

reasonably concluded that any efforts to exclude [a particular witness's] testimony . . . would have been futile, counsel did not perform deficiently by failing to make such efforts.").

¶34    In this vein, we further observe that in the context of deciding whether a particular restitution request "was untimely," our supreme court recently noted, in *State v. Blake*, 2025 UT 21, 582 P.3d 705, that after the victim requested restitution, the legislature amended the Restitution Act "to extend the time for seeking restitution." *Id.* ¶¶ 8 n.2, 38. The court then stated that "the statute in effect at the time of sentencing governs." *Id.* ¶ 8 n.2. A few months later, in *State v. Debrok*, 2025 UT 40, 579 P.3d 296, the supreme court elaborated on its holding in *Blake*, saying:

> When it comes to criminal restitution, generally the version of the Restitution Act in effect at the time of sentencing applies. This is because the district court orders restitution as part of the sentence imposed even though, in some cases, the exact restitution amount may be determined after sentencing. However, we acknowledge that we said otherwise in *State v. Sevastopoulos*, and we applied the Restitution Act in effect at the time of the underlying conduct. In light of this inconsistency, we clarify that as a general matter, the Restitution Act in effect at the time of sentencing controls. However, we do not rule out the possibility that in a future case, a party might argue that a particular provision of the [Restitution Act] should be treated differently.

*Id.* ¶ 13 n.3 (cleaned up).

¶35    We do not view the supreme court's foregoing clarification in 2025 as requiring reasonable counsel in 2024 to have made the argument that the particular deadline provision of the Restitution Act that controls is the one in effect at the time a restitution order is entered. Instead, we read the twin holdings of *Blake* and

*Debrok*—namely, that when it comes to restitution, generally the version of the Restitution Act in effect at the time of sentencing controls—as bolstering our determination that Counsel did not perform deficiently by not arguing for application of the 2023 Act.

¶36 Devore resists our determination regarding deficient performance by asserting that because the district court made no explicit finding of good cause for extending the default deadline under the 2017 Act, UOVC's request for additional restitution was untimely even under the 2017 Act. *See generally* Utah Code § 77-38a-302(5)(d)(i)–(ii) (2017) (allowing a court to extend the default one-year restitution deadline through the end of the defendant's probation term upon a finding of good cause).

¶37 The first problem with Devore's argument is that he raises it for the first time in his reply brief. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived . . . ." (cleaned up)). Moreover, an appellate court may imply unstated findings "if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy[] but simply failed to record the factual determination made." *Rayner v. Rayner*, 2013 UT App 269, ¶ 11, 316 P.3d 455 (cleaned up). In such an instance, we will "affirm the [district court's] decision if from the evidence it would be reasonable to find facts to support it." *Dole v. Dole*, 2018 UT App 195, ¶ 9, 437 P.3d 464 (cleaned up). Here, because the district court ordered Devore to pay additional restitution despite the fact that UOVC made its request more than three years after he was sentenced, reasonable counsel could have assumed that the court applied the 2017 Act and that it found good cause to extend the default deadline under the 2017 Act through the end of Devore's probation term. Ample undisputed evidence supports such a finding.

¶38 Specifically, according to UOVC's proffer, Roger declared that at the time of the burglary, he did not have insurance and did not know about UOVC or its ability to help him. Roger further declared that after he learned about UOVC and reached out for help, his medical provider stopped prioritizing "non-emergent surgeries" because of the COVID-19 pandemic. Only when that situation changed, Roger averred, was he able to receive the needed surgery. Because this evidence clearly supports the district court's implicit finding of good cause for extending the deadline to submit a restitution request through the end of Devore's probation, Counsel could have reasonably determined that good cause existed, that the court had made an implied finding to that effect, and that raising the issue of good cause for extending the deadline would have been futile.

¶39 Because Devore has not shown that Counsel performed deficiently by not arguing for application of the 2023 Act (or by not raising the issue of good cause for extending the deadline under the 2017 Act), his ineffective assistance of counsel claim fails.

## II. Proximate Cause

¶40 Devore next asserts that even if the district court had authority to order additional restitution, it erred "in concluding that the State met its burden to show that [Devore's] actions proximately caused [Roger's] injuries." We disagree.

¶41 "In restitution cases, the burden is on the State to prove proximate cause." *State v. Morrison*, 2019 UT App 51, ¶ 13, 440 P.3d 942. Proximate cause "requires proof of two elements: (1) but-for causation and (2) foreseeable harm." *State v. Watson*, 2021 UT App 37, ¶ 15, 485 P.3d 946. The "fundamental test is whether under the particular circumstances the defendant should have foreseen that his [or her] conduct would have exposed others to an unreasonable risk of harm." *State v. Becker*, 2018 UT App 81, ¶ 13, 427 P.3d 306 (cleaned up). "Furthermore, a trial court's

restitution award must rely on a sufficient evidentiary basis, and it may award restitution only in cases where liability is clear as a matter of law and where the commission of the crime clearly establishes causality of the injury or damages." *Watson*, 2021 UT App 37, ¶ 15 (cleaned up). Applying the foregoing principles, we conclude that Devore has not met his burden to "demonstrate that the clear weight of the evidence contradicts the court's ruling." *State v. Murray*, 2023 UT App 52, ¶ 21, 530 P.3d 982 (cleaned up).

¶42 First, UOVC proffered evidence from which the district court could find that but-for causation was clearly established. According to UOVC's proffer, Roger declared that after Devore punched him, his "right nasal passage was visibly collapsed and [he] could no longer breath[e] out of his right nostril." Roger also declared that the "injury did not heal on its own" and he "was left with a visibly damaged nose" and "obstructed breathing." UOVC's proffer regarding Specialist's review of the police report from the incident indicated that officers reported that Roger "had noticeable swelling around his mouth . . . [and] nose, and below his eyes" following Devore's punch. Specialist also described her review of the invoices for Roger's surgery, which stated that Roger "was seen for nasal trauma that resulted in airway obstruction" and that "the nasal obstruction and deformity appeared to be a result of the facial trauma [Roger] experienced several years prior to his visit."

¶43 Roger acknowledged that his face was injured during a 2017 attack in Salt Lake City and during a bathroom fall in 2017. But he stated that neither of those incidents left him with a broken nose or other lasting nasal injuries. While Counsel argued that the attack in Salt Lake City and the bathroom fall were the "more likely" causes of Roger's nasal injuries, the only evidence Devore proffered in support of that argument was his declaration that he heard Roger "wheezing when he breathed through his nose" on the night Devore punched Roger. However, the court clearly found Roger's declarations regarding a lack of ongoing nasal

injury prior to Devore's punch to be credible. And "on appeal, we give deference to that credibility determination." *Id.* ¶ 39.

¶44    In short, UOVC proffered ample evidence on which the district court could base its finding that Devore's punch was the but-for cause of the nasal injuries Roger's surgery was aimed at addressing. Devore has not met his burden to demonstrate that the clear weight of the evidence shows otherwise.

¶45    UOVC also proffered evidence from which the district court could find that the foreseeability of Roger's nasal injuries was clearly established. We have said in the context of aggravated assault that "not all punches are created equal . . . because the force behind each blow differs" and that a factfinder "must infer from something in addition to the fact that a punch was thrown how much force a defendant actually used and whether that force was likely to cause serious bodily injury under the particular facts of the case." *State v. McDonald*, 2025 UT App 172, ¶ 28, 581 P.3d 172 (cleaned up). We noted that "the extent and type of injuries the victim suffered are among the types of evidence probative of that question." *Id.* (cleaned up). The same principle applies here: the extent and long-term nature of Roger's nasal injuries were probative to show that Devore's punch to Roger's face was quite forceful and its manner was otherwise such that Devore should have foreseen that it posed an unreasonable risk of harm. Also probative of the foreseeability of Roger's injuries is the reasonable inference—namely, that Devore delivered a violent punch, in anger, and with disregard for its possible consequences—which is suggested by the fact that he was in the midst of committing a felony and had just discovered Roger engaging in sexual intercourse with Devore's "paramour" when he threw the punch.

¶46    Counsel proffered below that Devore hit Roger on the left side of the face, and he asserted that "there's no connection" "between the attack to the left side of the face and the collapse of the right nasal passage." However, foreseeability generally

requires "a likelihood of an occurrence of the same general nature," not a likelihood "that the particular accident would occur." *A.W. v. Marelli*, 2024 UT App 8, ¶ 26, 543 P.3d 786 (cleaned up). Thus, while Devore may not have anticipated that his punch to Roger's left cheek would cause Roger's right nostril to collapse, Devore needed to foresee only the likelihood of an injury of the same general nature (i.e., facial damage) as a result of his punch.

¶47 Finally, citing the provision of the Restitution Act requiring courts to examine "the cost of *necessary* medical and related professional services," Utah Code § 77-38a-302(5)(b)(ii) (2017) (emphasis added), Devore argues that UOVC was also required to prove that the expenses for which it sought restitution were "medically necessary." In his principal brief, he asserted that UOVC could not prove medical necessity without a statement from a medical provider about Roger's need for surgery. In his reply brief, however, Devore concedes that our supreme court's decision in *Blake* renders his argument regarding the need for a statement from a medical provider to establish medical necessity "no longer viable." *See State v. Blake*, 2025 UT 21, ¶¶ 43–44, 582 P.3d 705 (holding that a UOVC representative's testimony "about the nature of care provided, the procedures, the amounts billed for the victim's medical care, discounts applied, and his work confirming that the billing codes [in the applicable invoices] aligned with treatment for" the victim's injuries was sufficient to support a finding that the expenses for the basis of the restitution award were reasonable and necessary in the restitution context). Yet Devore argues that the evidence UOVC put on was not sufficient, even in light of *Blake*, to demonstrate medical necessity. We are not persuaded. The parties here agreed to present evidence at the restitution hearing by way of proffer. Part of UOVC's proffer included a summary of Roger's declaration in which he stated that Devore's punch left him "with a visibly damaged nose and an inability to breathe out of one of [his] nostrils, which would require surgery to correct" and that a doctor had "recommended that [he] receive reconstructive

surgery." And Specialist's declaration, the contents of which were also proffered, stated that Specialist reviewed the invoices and medical codes outlined therein. This was sufficient under *Blake* to show that the medical expenses were necessary to treat Roger's injuries. *See id.*

¶48    For the foregoing reasons, we conclude that Devore has not met his burden of demonstrating that the district court's proximate cause determination is contradicted by the clear weight of the evidence.

CONCLUSION

¶49    Devore has not established that the district court committed plain error or that Counsel rendered ineffective assistance relative to the court's application of the 2017 Act in this case. Additionally, Devore has not met his burden of demonstrating that the district court's proximate cause determination is contradicted by the clear weight of the evidence. Accordingly, we affirm the court's order of additional restitution.

———————